**UNITED STATES of America, Plaintiff,**

**and**

**Yonkers Branch-National Association for the Advancement of Colored People, et al., Plaintiffs-Intervenors,**

**v.**

**YONKERS BOARD OF EDUCATION; City of Yonkers; and Yonkers Community Development Agency, Defendants.**

**No. 80 CIV 6761 (LBS).**

United States District Court, S.D. New York.

Nov. 20, 1985.

U.S. Dept. of Justice, Civ. Rights Div., Washington, D.C., Joshua P. Bogin, Kenneth Barnes, Michael L. Barrett, Sarah Vanderwicken, for plaintiff.

Michael H. Sussman, Brooklyn, N.Y., for plaintiffs-intervenors N.A.A.C.P.

Vedder, Price, Kaufman, Kammholz & Day, New York City, Michael W. Sculnick, Gerald S. Hartman, Nicholas J. D'Ambrosio, Jr., for defendants City of Yonkers and Yonkers Community Development Agency.

Butzel, Long, Gust, Klein & Van Zile, John B. Weaver, John H. Dudley, Mark T. Nelson, Detroit, Mich., Hall, Dickler, Lawler, Kent & Howley, New York City, Paul Whitby, for defendant Yonkers Bd. of Educ.

U.S. Dept. of Justice, Civ. Div., Raymond M. Larizza, Calvin E. Davis, Kirk Victor, Washington, D.C., John W. Herold, Office of Litigation, U.S. Dept. of Housing & Urban Renewal, Washington, D.C., for third-party defendant Dept. of Housing & Urban Development.

SAND, District Judge.

In an opinion filed this date the Court has stated its findings of facts and conclusions of law with respect to the liability aspects of this school and housing desegregation case. We address in this opinion the issues raised by the application of the Special Master, Alexander D. Forger, Esq., for an allowance of fees.

At a pretrial conference in the fall of 1982 this Court raised with counsel the possible appointment of a special master whose sole responsibility would be to assist the parties in efforts to achieve a negotiated settlement of this controversy. The Court then advised the parties that it was considering appointment of Alexander D. Forger, Esq. to this post and briefly outlined his background and experience [1].

After consideration of the Court's proposal and with the sole expression of reservation being as to the liklihood of success, all parties consented to the appointment of Mr. Forger.

On September 7, 1982 the Court entered an order appointing Mr. Forger as Special Master pursuant to Rule 53(a) of the F.R. Civ.P.:

> To assist the parties in arriving at a consensual resolution of this proceeding. The Court anticipates that the Special Master will meet with the parties, set timetables for the exchange of proposals, mediate where he deems it appropriate to do so and generally to serve as a catalyst in expediting or promoting settlement.

Mr. Forger thereupon embarked upon his duties as set forth in his Affidavit and in his statement to the Court on May 15, 1984 (see Transcript of Proceedings ("Tr.") 10–16).

With respect to the housing aspects of this controversy, to a significant extent as a result of Mr. Forger's efforts, a Consent Decree was entered into between the Yonkers Branch-NAACP ("NAACP") and the

---

**1.** Mr. Forger has been a member of the bar of New York State since 1951 and has been a partner in the law firm of Millbank, Tweed, Hadley and McCloy since 1958. He has served as President of the New York State Bar Association, Vice President of the New York Bar Foundation, member of the American Bar Association's House of Delegates, Chairman of the Board of the New York Legal Aid Society, Trustee of the Rockefeller University and Trustee of New York Law School. Mr. Forger describes his practice as follows:

> I have been engaged principally in the practice of law as it relates to individual clients and not-for-profit institutions and organizations. In the course of my practice, I have frequently been engaged in the process of negotiations and efforts of dispute resolution. Forger Aff. ¶ 2. Mr. Forger had one other qualification for the post under consideration, also disclosed by the Court to the parties prior to his appointment: a lifetime familiarity with the City of Yonkers.

United States Department of Housing and Urban Development ("HUD") which was approved by this Court on March 19, 1984. With respect to the school aspects of this case, Mr. Forger's efforts contributed to the preparation of a proposed Consent Decree which was adopted in public session by the Yonkers Board of Education on March 20, 1984 by a vote of 8 to 1. Tr. 12. That Consent Decree was then submitted to the Yonkers City Council for a determination of whether it would provide the requisite financial resources for its implementation. Forger Affidavit in Support of Application ("Forger Aff.") ¶ 12. The City Council determined not to implement the proposed Consent Decree. Tr. 15.

On May 15, 1984, Mr. Forger's efforts at achieving a settlement were placed on a "standby" status. After inquiry by the Court, no party objected to his "continuing to serve as Special Master in the manner in which he has been functioning". Tr. 25.

By application dated May 14, 1984, Mr. Forger sought compensation for his services during the period from September 1982 to March 31, 1984. That application has been held in abeyance by the Court pending a resolution of the liability phase of these proceedings and is now ripe for determination.

The application raised several questions. No party questioned Mr. Forger's entitlement to compensation pursuant to Rule 53(a). Tr. 8022. Questions were raised, however, as to the amount sought and the apportionment of the fee among the parties.

## AMOUNT OF COMPENSATION

Mr. Forger seeks compensation in the amount of $144,031.00 for performance of his Special Master's duties. He states in his Affidavit (paragraph 16):

The total expenditure of time in matters relating to my duties as Special Master is well in excess of 800 hours through the month of March 1984. As to a substantial number of these hours, I have made only partial billing record entry, and in some instances, not at all, out of a sense that some of that effort was merely ancilliary to my main task (*i.e.*, some community meetings, or in some respect duplicative and not totally productive). The recorded time for consideration on this application is approximately 750 hours of which approximately 100 hours were of my associates' and legal assistants', and the balance my own. These totals exclude all time spent in preparing this application for compensation. A computer printout detailing these recorded activites and the time devoted to them, based upon contemporaneous time records routinely prepared by me and my associates and assistants, is annexed hereto ...

Mr. Forger further states in his Affidavit that his regular hourly fee rate is $265.00 and that the time charges for associates and assistants range from $25.00 an hour to $125.00 an hour. Based on the computation set forth in his Affidavit, standard hourly charges would amount to $180,-352.50. Mr. Forger further states that: "... mindful of the fiscal circumstances of the City of Yonkers and its school board and of the 'public' nature of the work I was assigned ..." he seeks less than his firm's standard rates. Thus, he suggests that these be reduced to $140,000.00 together with out-of-pocket disbursements in the amount of $4,031.00. Forger Aff. ¶ 19.

Plaintiff United States and third-party defendant HUD are the only parties to object to the amount of the fees.[2]

 No objection is made as to the amount of time expended nor the nature of the services rendered. These parties take the position, however, that this Court should follow the formula utilized by Chief Judge Jack B. Weinstein of the Eastern District of New York in awarding a Special Master's fee "based upon about half that obtainable by private attorneys in commer-

---

**2.** As discussed at page 203 *infra*, we conclude that the United States has no responsibility for any portion of the Special Master's fee. The objection is therefore primarily that of HUD.

cial matters", *Hart v. Community School Board of Brooklyn, New York School District # 21*, 383 F.Supp. 699, 767 (E.D.N.Y. 1974), *aff'd*, 512 F.2d 37 (2d Cir.1975), a formula also invoked by the Sixth Circuit in *Reed v. Rhodes*, 691 F.2d 266, 267 (6th Cir.1982). For the reasons set forth below, we believe the *Hart* formula is inappropriate in this case.

First, *Hart* related to the appointment of a special master after a determination of liability. The nature of the master's duties with respect to a remedial phase of a desegregation suit differs significantly from those performed by the special master here. *Cf. Reed v. Rhodes, supra.* Second, in *Hart* Judge Weinstein's intention to limit the rate of compensation of the master was set forth and known to the parties and to the special master prior to the appointment. Here, although the appointment of a special master was discussed with the parties prior to his appointment and the appointment was made with the consent of the parties, no effort was made by the parties to establish a pre-determined rate of compensation. Absent such a limitation, the question of a special master's compensation is governed by the general principles applicable to such matters. Rule 53 provides that the compensation of the master shall be fixed by the court in its discretion. In discussing rates of a master's compensation, the Supreme Court has written (*Newton v. Consolidated Gas Co.*, 259 U.S. 101, 105, 42 S.Ct. 438, 439, 66 L.Ed. 844 (1922)):

> The value of a capable master's services cannot be determined with mathematical accuracy; and estimates will vary, of course, according to the standard adopted ... [H]e should be adequately remunerated for actual work done, time employed and the responsibility assumed. His compensation should be liberal, but not exorbitant. The rights of those who ultimately pay must be carefully protected; and while salaries prescribed by law for judicial officers performing similar duties are valuable guides, a higher rate of compensation is generally necessary in order to secure ability and experience in an exacting and temporary employment

which often seriously interferes with other undertakings.

Third, once Mr. Forger embarked on his efforts, the parties did not seek to curtail his activities but, we believe, encouraged that he continue and intensify these efforts. Fourth, and perhaps of greatest importance, Mr. Forger had on his own initiative given considerable recognition to the "public" nature of his services both in setting hourly rates significantly below those of his normal hourly rates in commercial matters and also in determining which hours should be treated as billable for these purposes. As stated by counsel for the Yonkers Board of Education, Mr. Forger came to a point of near success "... beyond my wildest expectations when we discussed appointing him, because I had been thinking it wouldn't do any good, but we ought to go ahead and do it. I don't think we should underestimate the amount of time that he had to have kept out of this application, just from watching what occurred." Tr. 8033 (Remarks of John Weaver, Esq.).

We believe that to apply a *Hart*-type discount to the relatively modest application of the Special Master would be in effect to "double discount" his services and would deter others similarly situated from exercising Mr. Forger's commendable restraint in seeking recompense. We are aware that Mr. Forger performed services as Special Master in the evenings and on weekends; that the task assigned to him was formidable and required great skill and diplomacy; that he gained the respect of all concerned for those skills which he in fact possesses and which led to his appointment. We approve the application in the amount requested.

## APPORTIONMENT OF FEES

### 1. *The United States and HUD*

The initial and "tentative" (Memorandum of Points and Authorities of the United States Department of Housing and Urban Development in Opposition to Application for Compensation of Special Master, filed

June 11, 1984, at 2) position of the federal defendants was that "the doctrine of sovereign immunity may require denial of the application insofar as it seeks to impose liability for master's fees and expenses on the Federal Government." *Id.*

Upon further consideration of the matter, the federal defendants modified their "tentative" position and stated:

Upon further consideration of this matter, it has been determined that, in light of the circumstances of this case, the United States and HUD will not oppose the assessment against the Federal Government of reasonable fees and expenses of the Master to the extent that the Master's services were rendered in connection with particular aspects of the case as to which the United States or HUD is found to be a non-prevailing party. Here, the Federal Government, as well as all other parties, did not seek an order regarding compensation prior to Mr. Forger's acceptance of the position. Thereafter, both the United States and HUD accepted the benefit of the Special Master's efforts to achieve a settlement. The Federal Government's positon is based upon the unique circumstances of the present case only and not upon any general federal policy. Thus, the Federal Government continues to assert all of the arguments in its prior memorandum relating to the timing, apportionment and amount of the Master's compensation raised previously, but will not assert that absolutely no payment from the Federal Government is appropriate.

Supplemental Memorandum of Points and Authorities, filed September 6, 1984, at 2–3 (footnote omitted).

2. *The Prevailing Party*

As noted, *supra,* the federal defendants do not oppose the assessment of reasonable fees and expenses of the Special Master to the extent to which the United States or HUD is found not to be a prevailing party. Defendants City of Yonkers and the Yonkers Community Development Agency ("CDA") object to any suggestion that the master's fee be apportioned according to

liability, asserting that no mention had been made in the Order of Appointment that fees would be so apportioned and that all parties had received the benefit of Mr. Forger's services.

This argument fails as to the United States. Master's fees are regarded as costs and therefore ultimate liability is determined under F.R.Civ.P. 54(d). The consequence of silence as to fee apportionment in this Court's order pursuant to F.R. Civ.P. 53 appointing the Special Master was therefore simply to bring into operation the general principles which govern such matters. Under F.R.Civ.P. 54(d), "Cost shall be allowed as a matter of course to the prevailing party unless the Court otherwise directs; but costs against the United States shall be imposed only to the extent permitted by law." Federal statutes permit the assessment of costs against the United States only if it has not prevailed on the merits. *See North Atlantic & Gulf S.S. Co. v. United States,* 209 F.2d 487, 489 (2d Cir.1954); *see also* Equal Access to Justice Act, 28 U.S.C. § 2412(a) (limiting reimbursement from the United States to the prevailing party). Since we have found in the separate Opinion filed this date that the United States has prevailed with respect to its claims against all of the defendants, it is beyond our power as a matter of law to apportion any of the master's fee to the United States.

HUD, however, is not the prevailing party with respect to the NAACP, as reflected in the March 1984 Consent Decree, and this Court concludes as a matter of discretion that it should bear an appropriate portion of the master's fee applicable to that aspect of the case.

The NAACP is a prevailing party and the question presented therefore is to what extent, if any, it should be held responsible for any portion of the master's fee, since with respect to it, the Court is not precluded by virtue of any rule or statute from apportioning a measure of such fees against it even though it prevailed. Thus, the situation with respect to

the NAACP is different from that of the United States. It is clear that the NAACP stood to benefit and, in fact, benefitted from the Special Master's services. It is also clear that the Court may in its discretion assess a private prevailing party with a portion of a master's fee. *See E.I. Du Pont De Nemours & Co. v. Purofied Down Products Corp.*, 176 F.Supp. 688, 701 (S.D.N.Y.1959); *Soya Processing Co. v. Sirota*, 104 F.Supp. 428, 434 (S.D.N.Y. 1952). We therefore apportion the master's fee as follows:

1. Equally as among the City of Yonkers and the CDA (together treated as one party), the Yonkers Board of Education and the NAACP, as to those portions of the master's fees attributable to matters as to which HUD was a prevailing party; and

2. Equally among the foregoing parties and HUD as to the balance of the master's fees, *i.e.*, as to that portion of the master's fee attributable to matters as to which HUD is not a prevailing party.

We direct that the Special Master prepare an allocation of his fee in accordance with the above-stated ruling and that that allocation be furnished to the parties and to the Court within ten days from the date hereof.

We leave the question as to the time at which payment should be made for further discussion among the parties and the Special Master.

Settle Order.