**UNITED STATES of America, Plaintiff,**

**and**

**Yonkers Branch–National Association For the Advancement of Colored People et al., Plaintiff–Intervenors,**

**v.**

**YONKERS BOARD OF EDUCATION; City of Yonkers; and Yonkers Community Development Agency, Defendants.**

**CITY OF YONKERS and Yonkers Community Development Agency, Third–Party Plaintiffs,**

**v.**

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, and Secretary of Housing and Urban Development, Third–Party Defendants.**

**No. 80 Civ. 6761 (LBS).**

United States District Court, S.D. New York.

Dec. 15, 1987.

U.S. Dept. of Justice, Housing and Civ. Enforcement Section, Civ. Rights Div., Washington, D.C., Brian Heffernan, Manuel Vargas, for plaintiff U.S.

Michael H. Sussman, Yonkers, N.Y., for plaintiff-intervenors N.A.A.C.P.

Vedder, Price, Kaufman, Kammholz & Day, New York City, Michael W. Sculnick, for defendants City of Yonkers and Yonkers Community Development Agency.

Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., John B. Weaver, John H. Dudley, Mark Nelson, for defendant Yonkers Bd. of Educ.

U.S. Dept. of Justice, Civ. Rights Div., Raymond LaRizza, John W. Herold, Office of Litigation, U.S. Dept. of Housing & Urban Development, Washington, D.C., for third-party defendant Dept. of Housing & Urban Development.

## OPINION

SAND, District Judge.

The Plaintiff–Intervenors, the Yonkers Branch NAACP, et al., seek an interim award of fees and costs for the period from the inception of the participation in this case of their lead counsel, Michael H. Sussman, Esq., in June, 1981, through the date of the application, May 22, 1987. In their initial application, a fee award for 5,400 hours, at an hourly rate of $150, or a total of $810,750. was sought. In its reply brief, page 13, Intervenors agree that no award should now be made for the time (194.05 hours) expended in connection with the pending appeals. An interim costs award in the amount of $182,059.52 is also sought. Intervenors further propose that these fees and costs be allocated 55% to the City of Yonkers; 30% to the Yonkers Board of Education ("YBE") and 15% to the United States Department of Housing and Urban Development ("HUD"). The YBE and HUD have agreed to the application and we deal herein with the objections raised by the City of Yonkers.

## TIMELINESS OF APPLICATION

Yonkers first objects that:

"(1) the interim application is premature under local Rule 11(a) of the Civil Rules of the Southern and Eastern Districts of New York because an appeal is pending from the initial liability and remedial orders."

Defendant City of Yonkers, Memorandum, p. 2.

Local Rule 11(a) provides for the taxation of costs and disbursements "after final judgment, or in the case of an appeal by either party, within thirty (30) days after the disposition of the appeal."

The defendants have appealed this Court's liability and remedy orders and the case has been *sub judice* in the Court of Appeals for the Second Circuit since February 1, 1987. But the availability of interim fee awards where appropriate following a District Court's determination of liability is well recognized, *Hanrahan v. Hampton,*

446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980), and such awards have been made in comparable cases. *See e.g., Morgan v. Mc-Donough,* 511 F.Supp. 408 (D.Mass.1981) (Boston school desegregation case). An interim fee award is particularly appropriate here in the light of the length and complexity of this case and the magnitude of the time which counsel has been required to devote to it, at times to the virtual exclusion of all other professional activities. Moreover, by virtue of the fee arrangement between Michael H. Sussman and the NAACP, he asserts:

> "Further delays will only exacerbate the economic harm my firm has suffered as a consequence of my expending so many hundreds of hours in consideration for $25/hour."

Affirmation of Michael H. Sussman, Esq., filed June 29, 1987, para. 32.

█ The application is not premature.

## ALLEGED DUPLICATION OF EFFORTS OF DEPARTMENT OF JUSTICE

Next, Yonkers asserts that:

> "(2) Intervenors should not be awarded fees for work which essentially duplicates the efforts of the Department of Justice."

There is no dispute that the principle which dictates against awards for duplicative services is a sound one. But after seven years of presiding over this litigation, this Court is well aware of the respective roles played by the various counsel. There was no duplication of effort at the trial itself. The Court made it clear that it would not permit duplicative questioning and this did not occur.

Nor is this a case in which Intervenors sought a free ride on the coattails of plaintiff's counsel. At all times during this protracted litigation, counsel for the NAACP has played a major contributing role, bringing to bear his considerable experience in similar litigation (*see* Sussman Affirmation, para. 9, 13) and professional skills. The objection cannot validly be pressed by anyone having a familiarity with these proceedings.

## ALLOCATION OF FEES

As its third objection, Yonkers asserts:

> "The NAACP's proposed allocation of fees on the basis of 'culpability', rather than an apportionment based on hours devoted to pursuing claims against each defendant is erroneous."

Yonkers Memorandum, p. 3.

█ This is not a case, like *Ingram v. Madison Square Garden Center,* 482 F.Supp. 918 (S.D.N.Y. 1979) (LBS), where it was possible, at a stage of litigation following a partial settlement, to make an allocation of fees among individual defendants on the basis of hours spent pursuing the claims against them. Here, the City has been found liable under both the school and housing components of the case. The City, in any event, fully funds the YBE, so that the allocation of fees as between these two entities has no true economic significance. The allocation of 55% City, 30% YBE, 15% HUD, seems entirely appropriate.

## HOURLY RATE

█ Intervenors seek compensation at the flat rate of $150. per hour for the entire period June, 1981 through May, 1987. Yonkers objects, stating:

> "The hourly rate claimed by Intervenors for their counsel should be adjusted to reflect differences in that rate over the period of the litigation."

Yonkers is correct in asserting that hourly rates of compensation should be determined by reference to the reasonable value of such services as of the time rendered.

The City suggests an award of $90/hour for the first four years of litigation and $135/hour for the next two years. Intervenors reply that, if the period is to be divided, a rate of $125/hour for the first four years and $175/hour for the remainder would be appropriate. For this latter rate, it cites *Mendoza v. Blum,* 602 F.Supp. 200 (S.D.N.Y.1985); *Williamsburg Fair Housing Committee v. Ross–Rodney Housing Corp.,* 599 F.Supp. 509 (S.D.N.Y. 1984); *Lyons v. Cunningham,* 583 F.Supp. 1147 (S.D.N.Y.1983). For the earlier period

of times, Mr. Sussman cites fee awards received by him and others during that time frame and in parts of the country where market rates were lower than in the greater New York Metropolitan Area. Sussman Affirmation, pp. 17–18.

▇▇▇ We believe that the hourly rate sought by Intervenors is indeed modest, whether one bifurcates the time periods or combines and averages the hourly rates. Intervenors' counsel, regardless of his years at the bar, has developed impressive credentials in relevant areas of the law. Our fee award is to be made on a market rate basis, without regard to the non-profit or quasi non-profit status of counsel or clients. We take into consideration counsel's background and experience, the nature of the litigation, the "risks," both personal and economic, entailed in this litigation, and above all, the quality of the services rendered. Compensation at the rate of $150 per hour is fully warranted.

We also agree that the claim of some 5,400 hours (to be reduced by deletion of 194.05 hours for appellate matters; *see* p. 328, *supra*) is modest. Brief in Support of Intervenors' Application, p. 12.

### COSTS AND SPECIFIC TIME CHARGES

Yonkers objects to various items for which Intervenors seek compensation for time spent and reimbursement for costs.

A. *Master's Fee*

In 1985, in our award of fees to the Special Master appointed to assist the parties in efforts to achieve a negotiated settlement of this vexatious litigation, we addressed the question whether the NAACP, as the prevailing party, should nevertheless bear a proportion of the fees. We wrote (108 F.R.D. 199, 204 (1985)):

"It is clear that the NAACP stood to benefit and, in fact, benefited from the Special Master's services. It is also clear that the Court may, in its discretion, assess a private prevailing party with a portion of a Master's Fee."

We proceeded to exercise our discretion to apportion the Master's Fee of $144,031 equally among the City, the YBE, the NAACP and HUD (to the extent that HUD was not a prevailing party).

The NAACP now asks us to reexamine that determination and to award it as costs the approximately $35,000 which it would otherwise be called upon to pay to the Special Master (a payment which by consent has been deferred).

▇▇▇ On reconsideration in the light of the facts now known, the Court exercises its discretion and relieves the Intervenors of their obligation with respect to the Master's compensation and directs that Yonkers pay forthwith directly to the Master the sums of money still owed to him. The factors which the Court takes into consideration include the following:

(a) the modest nature of the Intervenors' application, both with respect to costs and services.

As noted, the application is unopposed by the YBE and HUD. Except to the relatively minor extent noted below, we find the application to be fully warranted. As to the hourly rate of compensation and amount of time spent, the application seeks an award in the lower range of reasonableness.[1]

The Court's overall perception is that the application is fair and seeks to compensate the Intervenors and their counsel reasonably. The application does not seek a windfall, nor does it constitute an attempt by Intervenors to finance activities other than this litigation. (The sole exception to this, as noted below relating to time charges for press conferences, involves a small portion of the total application).

Had the application sought fees and expenses higher than the amount sought so that the share to be received by the Intervenors would have been $35,000 greater

---

1. In the Court's opinion, Intervenors have wisely avoided the practice followed by some other fee applicants of seeking, in the first instance, an amount which leaves room for reduction by the Court to achieve the result actually sought. The Court finds more persuasive and compelling an application which is not an invitation to judicial bargaining and compromise.

(*see* Sussman application para. 6 as to allocation between attorney and client), the application would, in the Court's view, not have been unreasonable. In this context, to continue to impose on the Intervenors the obligation to compensate the Master no longer appears to be a sound exercise of discretion.

(b) The intransigence and in several instances, the lack of good faith on the part of the City, is also a factor to be considered.

At the same time the Court made its initial allocation of responsibility for the Master's fees, the Court issued its liability Opinion. The Court at that time nurtured the hope that a consensus would emerge in which settlement might obviate what has occurred during the remedy phase of this litigation. Had a propitious climate for settlement developed, the Court contemplated asking the Master, Alexander Forger, Esq., who had gained the respect and admiration of all the parties, to again step into the fray. In order to maximize his position of neutrality, it seemed wise, to the extent permitted by law, to have all parties equally responsible for his fees.

None of this has happened and so this consideration is no longer relevant. What is relevant, however, has been the extreme intransigence of the City. This has manifested itself in the imposition of delays and obstacles to virtually every effort to implement the Court's remedial orders. As a result, the costs of this litigation have been magnified. Since this consequence has flown from the actions of the City, it seems fair that it now bear what had been the Intervenors' share of the Master's fees.

We do not reallocate these fees among the City, the YBE and HUD because we believe it would be inappropriate to do so. As noted previously, since the City funds the YBE, the costs are in any event paid by the City and the significance of such a reallocation as between Yonkers and the YBE would be more symbolic than economic. In any event, we believe the considerations noted above are peculiar to Yonkers and we therefore grant the Intervenors' application to have the City pay the share of the Master's fees previously imposed upon the Intervenors. We accomplish this by directing the City to make such payment directly to the Master.

## WITNESS FEES

Citing *Crawford Fitting Co. v. Gibbons,* —— U.S. ——, ——, 107 S.Ct. 2494, 2498–99, 96 L.Ed.2d 385 (1987), Yonkers contends that the maximum award which can be made to reimburse for expert witness fees is that set forth in 28 U.S.C. § 1821(b). This limit is $30 per day for each day's attendance plus travel time. Intervenors note, however, that Justice Blackmun in concurrence, —— U.S. at ——, 107 S.Ct. at 2499, and Justices Marshall and Brennan in dissent, —— U.S. at ——, n. 1, 107 S.Ct. at 2500 n. 1, highlighted the fact that the question of awarding expert witness fees in a civil rights case under 42 U.S.C. § 1988 was not before the Court.

Further, Intervenors note the crippling effect such a limitation would have on civil rights suits in which the defendant generally has far greater resources in litigation in which expert testimony is often a critical factor.

■ Reimbursement for expert witness fees in suits of this nature is not unusual. In light of past practice, the congressional policy of encouraging the assertion of legal rights in civil rights matters as manifested in 42 U.S.C. § 1988 and the adverse impact which a $30 a day limitation on expert witness reimbursement would have on such litigation, we decline to impose such a ceiling. Nor do we decline reimbursement for an expert consulted but not called as a witness. The Court urged the parties to proceed expeditiously. As it was, the trial took over 80 days. To require a litigant with limited resources to call an expert whose testimony that party concludes is in fact not needed, solely to obtain reimbursement, would be counter productive.

## PRESS CONFERENCES

■ The City objects to inclusion in the fee application of time spent by Intervenors' counsel in conferences with the

press. We agree with Mr. Sussman that communication with the press in this matter of great public interest was necessary and appropriate, especially when defendants' counsel talked freely to the press and was compensated for the time he spent doing so. However, it does not follow that everything that counsel has done to further public understanding or which related to the issues presented by the suit is time "expended on the litigation." We decline to reimburse Intervenors for such activity. *See Society for Good Will to Retarded Children v. Cuomo,* 574 F.Supp. 994, 999 (E.D.N.Y. 1983) ("Although press coverage may have helped plaintiff's case, this was not legal work recoverable under Section 1988"). We recognize that each case is unique and that the need to inform the press with respect to matters impacting on Yonkers schools and housing may have far exceeded such need with respect to the matter which Chief Judge Weinstein dealt with in the above cited litigation. We nevertheless believe that time spent in such endeavor which we assume to have been proper, useful and properly chargeable to the client, is not recoverable pursuant to 42 U.S.C. § 1988.

## MISCELLANEOUS OBJECTIONS

The City raises a number of miscellaneous objections to the inclusion of costs attendant on the Intervenors' maintenance of a special office proximate to the Courthouse for the sole purpose of facilitating this litigation, paralegal and similar expenses, etc. All of these costs are traditionally and properly awarded in cases of this sort and are allowed.

## CONCLUSION

Intervenors' application for fees and costs is granted except with respect to time spent in press conferences. The Court revises its allocation of responsibility for the Master's fees as set forth in our ruling (108 F.R.D. 199) and directs that the City pay forthwith and directly to the Master that portion of his fees previously assessed to Intervenors.

Settle order.