**NEW YORK STATE NATIONAL ORGANIZATION FOR WOMEN; New York City Chapter of the National Organization for Women; National Organization for Women; Religious Coalition for Abortion Rights–New York Metropolitan Area; New York State National Abortion Rights Action League, Inc.;**

**Planned Parenthood of New York City, Inc.; Eastern Women's Center, Inc.; Planned Parenthood Clinic (Bronx); Planned Parenthood Clinic (Brooklyn); Planned Parenthood Margaret Sanger Clinic (Manhattan); OB–GYN Pavilion; the Center for Reproductive and Sexual Health; VIP Medical Associates; Bill Baird Institute (Suffolk); Bill Baird Institute (Nassau); Dr. Thomas J. Mullin; Bill Baird; Reverend Beatrice Blair; Rabbi Dennis Math; Reverend Donald Morlan; and Pro–Choice Coalition, Plaintiffs,**

**and**

**City of New York, Plaintiff–Intervenor,**

**v.**

**Randall TERRY; Operation Rescue; Reverend James P. Lisante; Thomas Herlihy; John Doe(s) and Jane Doe(s), the last two being fictitious Names, the real names of said defendants being presently unknown to plaintiffs, said fictitious names being intended to designate organizations or persons who are members of defendant organizations, and others acting in concert with any of the defendants who are engaging in, or intend to engage in, the conduct complained of herein, Defendants.**

**No. 88 Civ. 3071(RJW).**

United States District Court,
S.D. New York.

May 31, 1990.

Center for Constitutional Rights (David Cole, Mary M. Gundrum, Rhonda Copelon, of counsel), Now Legal Defense and Educ. Fund (Alison C. Wetherfield, Sarah E. Burns, of counsel), New York City, for plaintiffs.

Michael E. Tierney, New York City, Rutherford Institute of Connecticut, Inc., Milford, Conn. (Joseph P. Secola, George J. Mercer, of counsel), for defendants.

A. Lawrence Washburn, Jr., New York City, for defendants and respondents Florence Talluto, Michael McMonagle, Michael La Penna, Jeff White.

John J. Broderick, Syosset, N.Y., for respondent Jesse Lee.

Kevin P. McGovern, Brooklyn, N.Y., for respondent Joseph Foreman.

Putney, Twombly, Hall & Hirson (John P. Hale, of counsel), New York City, for respondents Adelle and Bernard Nathanson.

Hogan & Traynor, (Richard J. Traynor, of counsel), Morristown, N.J., for respondent Robert Pearson.

ROBERT J. WARD, District Judge.

Plaintiffs move for an award of reasonable attorney's fees and costs against defendants pursuant to 42 U.S.C. § 1988 for services rendered in litigating this action from the spring of 1988 through the spring of 1989. In addition, plaintiffs seek attorney's fees and costs against certain defendants and other individuals and organizations acting in concert with those defendants (collectively "respondents") who were adjudged in civil contempt of this Court's orders in an Opinion dated February 27, 1990 (the "February 27 Opinion"), 732 F.Supp. 388. Attorney A. Lawrence Washburn, Jr. ("Washburn") has filed a motion to vacate that portion of the February 27 Opinion which imposed sanctions against him under Rule 11, Fed.R.Civ.P. For the reasons that follow, plaintiffs' motion for an award of attorney's fees and costs against defendants under section 1988 and plaintiffs' application for attorney's fees and costs against the contemnors are granted in part and denied in part. Washburn's motion to vacate the imposition of Rule 11 sanctions is denied.

## BACKGROUND

In April 1988, plaintiffs filed suit against defendants claiming violations of 42 U.S.C. § 1985(3) and New York State law. Plaintiffs sought injunctive and declaratory relief to restrain defendants from blocking access to medical facilities providing abortions. On May 4, 1988, this Court issued an order ("the May 4 Order") which enjoined defendants from obstructing ingress into or egress from abortion facilities in the New York City area, and which provided for coercive fines of $25,000 for each day defendants violated the terms of the order. Defendants moved to vacate the May 4 Order for plaintiffs' alleged failure to comply with Rule 65(c), Fed.R.Civ.P. That motion was denied on May 6, 1988. Also on that date, the Court of Appeals denied defendants' application for a stay of the May 4 Order pending appeal.

On May 31, 1988, plaintiffs sought to have defendants adjudged in civil contempt for demonstrations held in violation of the May 4 Order on May 5 and 6, 1988. In an Opinion dated October 27, 1988 ("the October 27 Opinion"), this Court granted plaintiffs' motion, denied defendants' cross-motion to dismiss, and adjudged defendants Randall Terry ("Terry") and Operation Rescue in civil contempt of the May 4 Order for their activities during the May 5 and May 6 demonstrations. 697 F.Supp. 1324, 1338. Accordingly, a judgment was entered by the Court holding Terry and Operation Rescue jointly and severally liable for $50,000.00 in civil contempt sanctions to be paid to plaintiff, National Organization for Women ("N.O.W."). In addition, a judg-

ment was entered in the amount of $19,-141.00 in favor of the City of New York for the costs it incurred as a result of defendants' failure to provide advance notice of either demonstration.

On October 7, 1988, plaintiffs moved to modify the Court's prior injunction to cover the dates October 28, 29 and 31, 1988, in response to defendants' publicized plan to conduct a "National Day of Rescue" at the end of October. At the conclusion of an evidentiary hearing conducted on October 25 and 27, 1988, the Court granted plaintiffs' motion and signed an order granting plaintiffs the modified preliminary relief they sought ("the October 27 Order"). Defendants' applications to this Court and to the Court of Appeals for a stay pending appeal of the October 27 Order were denied.

On December 21, 1988, plaintiffs moved for summary judgment and a permanent injunction upon receiving notice of blockades planned by Operation Rescue in the New York City area from January 12 to 14, 1989. These blockades had been organized in express retaliation for this Court's October 27 Opinion. 697 F.Supp. 1324. *See* Exhibit A, annexed to Affirmation of Mary M. Gundrum, filed December 21, 1988 (Letter from Randall Terry, dated November 16, 1988, urging participation in January blockades of "abortion mills" in the New York City area in order to "face down" this Court). On January 6, 1989, the Court heard oral argument on plaintiffs' motion for summary judgment and defendants' motion to dismiss and, on January 10, 1989, the Court issued a permanent injunction that again enjoined defendants from blocking access to medical facilities offering abortions and included coercive sanctions of $25,000 per day for violations of the order (the "Permanent Injunction"). The Permanent Injunction was modified from the previous orders to provide that each successive violation of the injunction would result in doubling the civil contempt sanction applicable to the contemnor.

On January 20, 1989, the Court issued an opinion granting plaintiffs' motion for summary judgment on their common law trespass claim and on their 42 U.S.C. § 1985(3) federal cause of action and permanently enjoining Operation Rescue and its participants from blocking ingress into and egress from medical facilities providing abortion related services ("the January 20 Opinion").

Defendants appealed from the various orders entered by this Court. The Court of Appeals, in an Opinion dated September 20, 1989, affirmed this Court's rulings which, *inter alia*, (1) enjoined defendants from blocking access to clinics offering abortions, (2) held Terry and Operation Rescue in contempt for violation of the May 4 Order, and (3) imposed discovery sanctions on defendants. 886 F.2d 1339. The ruling regarding payment of the civil contempt sanctions was modified to provide that the coercive penalties for violations of the orders be payable into Court, not to plaintiff N.O.W. 886 F.2d at 1353. Defendants' petition for certiorari was denied by the Supreme Court on May 21, 1990. —— U.S. ——, 110 S.Ct. 2206, 109 L.Ed.2d 532.

On June 9, 1989, plaintiffs moved by order to show cause to hold defendants Operation Rescue, Terry, Thomas Herlihy ("Herlihy") and respondents Bistate Operation Rescue Network ("B.O.R.N."), Jesse Lee ("Lee"), Joseph Foreman ("Foreman"), Michael McMonagle ("McMonagle"), Jeff White ("White"), Michael La Penna ("La Penna"), Florence Talluto ("Talluto"), Adelle Nathanson ("A. Nathanson"), Bernard Nathanson ("B. Nathanson") and Robert Pearson ("Pearson") in civil contempt for violating the May 4 Order, the October 27 Order and/or the Permanent Injunction.[1] The Court conducted a hearing on August 9, 10, 15 and 16, 1989 to determine factual issues disputed by respondents B. Nathanson, A. Nathanson and Pearson.

On February 27, 1990, the Court issued a decision granting in part and denying in part plaintiffs' motion for contempt. De-

---

**1.** Three additional individuals were initially named as respondents, but were not involved in the subsequent contempt proceeding.

fendants Randall Terry and Operation Rescue were adjudged in civil contempt of the October 27 Order and Permanent Injunction and assessed coercive civil penalties in the amount of $100,000. Defendant Herlihy was adjudged in civil contempt of the May 4 Order and assessed coercive civil penalties in the amount of $25,000. Respondent B.O.R.N. was adjudged in civil contempt of the October 27 Order and assessed coercive civil penalties in the amount of $25,000. Respondent Lee was adjudged in civil contempt of the May 4 Order, October 27 Order and Permanent Injunction and assessed coercive civil penalties in the amount of $100,000. Respondent Foreman was adjudged in civil contempt of the May 4 Order and Permanent Injunction and assessed coercive civil penalties in the amount of $25,000. Respondents McMonagle and White were adjudged in civil contempt of the Court's Permanent Injunction and each assessed coercive civil penalties in the amount of $25,-000. Respondent La Penna was adjudged in civil contempt of the May 4 Order and October 27 Order and assessed coercive civil penalties in the amount of $25,000. Respondent Talluto was adjudged in civil contempt of the October 27 Order and Permanent Injunction and assessed coercive civil penalties in the amount of $50,000. Respondent A. Nathanson was adjudged in civil contempt of the October 27 Order and assessed coercive civil penalties in the amount of $25,000. Respondent Pearson was adjudged in civil contempt of the Permanent Injunction and assessed coercive civil penalties in the amount of $25,000. Respondent B. Nathanson was not adjudged in civil contempt.

The Court held that each of the contemnors was liable to plaintiffs for a pro rata share of the attorney's fees and costs incurred by plaintiffs as a result of bringing the contempt motion against him or her, with the exception of those expenses associated with a renewed cross-motion to dismiss filed by Washburn on behalf of respondents Talluto, La Penna, White and McMonagle. The cross-motion to dismiss was denied and sanctions were imposed under Rule 11 against Washburn for refil-

ing this frivolous motion in contravention of the Court's instructions. Washburn was held liable to plaintiffs for the attorney's fees and costs they incurred as a result of filing their motion for Rule 11 sanctions and responding to his renewed cross-motion to dismiss.

In their motion under section 1988, plaintiffs seek $306,423 in attorney's fees and $4,294.31 in costs. This requested fee award is based on a lodestar amount of $153,211.50 and a multiplier of 2.0. Defendants dispute the applicability of section 1988 to their conduct, take issue with the authenticity and clarity of certain of the time records produced by plaintiffs and argue that a multiplier is inappropriate.

In their application for attorney's fees and costs against the contemnors, plaintiffs seek to recover a total of $121,073.50. Respondents Talluto, La Penna, White and McMonagle argue that attorney's fees may only be awarded under section 1988, not as a consequence of their contempt, and that a fee award under section 1988 is improper in this case. Respondent A. Nathanson argues that she should not be liable for any attorney's fees because she was adjudged in contempt of only one of the two orders which plaintiffs' alleged she had violated. Respondent Pearson joins in this argument. Respondent B. Nathanson claims that he should be awarded his attorney's fees and costs because he was not found in contempt. No other opposition to the fee application has been filed.

Plaintiffs seek $11,712.47 for attorney's fees and costs incurred as a result of Washburn's violation of Rule 11. Washburn, in his motion to vacate the imposition of Rule 11 sanctions, argues that an evidentiary hearing was required before sanctions could be imposed, and challenges certain procedural steps taken by plaintiffs in pursuing their Rule 11 motion.

The Court will first discuss plaintiffs' entitlement to fees under section 1988, the reasonableness of the award they request and defendants' objections to this award. Next, the Court will address the reasonableness of plaintiffs' application for fees against the contemnors, and the objections

raised by the contemnors to this fee request. Finally, the Court will consider Washburn's motion to vacate the imposition of Rule 11 sanctions and the reasonableness of the attorney's fees and costs requested by plaintiffs.

## DISCUSSION

### A. 42 U.S.C. § 1988

Pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, a district court, in its discretion, may award attorney's fees and costs to the prevailing party in any action or proceeding to enforce certain civil rights acts. 42 U.S.C. § 1988.[2]

#### 1. *Entitlement to Fees—Plaintiffs as Prevailing Parties*

■ The statutory language of section 1988 creates a presumption in favor of fee awards, *Di Filippo v. Morizio*, 759 F.2d 231, 234 (2d Cir.1985), and a prevailing party is ordinarily entitled to recover fees and costs unless there are special circumstances which would render such an award unjust. *See Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).

The Supreme Court has recently explained that a party meets the threshold requirement necessary to be considered a prevailing party under section 1988 if he or she succeeds on "any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Texas State Teachers Ass'n. v. Garland Independent School District*, 489 U.S. 782, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989) (rejecting the "central issue" test for determining an award of attorney's fees). *See also, Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute.

*Texas State Teachers Ass'n. v. Garland Independent School District, supra*, 109 S.Ct. at 1493.

Defendants concede, as they must in light of the numerous legal issues decided in plaintiffs' favor and plaintiffs' success in obtaining a permanent injunction, that "it is clear that the plaintiffs are 'prevailing parties' and that defendants are 'losing parties.'" Memorandum of Law, filed March 16, 1990 at 6. They argue, however, that special circumstances exist which render a fee award in this case unjust. Specifically, defendants maintain that they are immune from an award of attorney's fees because, as a *per se* rule, activity in opposition to abortion is exempt from the application of section 1988, and their conduct was motivated by a true desire to oppose abortion. They also argue that they should be treated as civil rights plaintiffs for purposes of the fee shifting analysis.

■ No case authority has been cited by defendants in support of their position that the civil rights fee shifting statute contains an exemption for cases involving abortion, and the Court rejects this proposed *per se* ban. *See Haskell v. Washington Township*, 864 F.2d 1266, 1279 (6th Cir.1988) (plaintiff entitled to fees under § 1988 in suit challenging zoning ordinances as infringing on right to abortion); *Planned Parenthood of Central and Northern Arizona v. Arizona*, 789 F.2d 1348, 1351–52 (9th Cir.) (plaintiff awarded fees under § 1988 after successfully challenging restrictions on the use of state funds for abortion-related services), *aff'd*, 479 U.S. 925, 107 S.Ct. 391, 93 L.Ed.2d 346 (1986);

---

**2.** Section 1988 states, in pertinent part, that: In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

Section 1988 has been interpreted in the same manner as the other fee-shifting provisions for particular civil rights claims which contain the "prevailing party" language. *See Independent Federation of Flight Attendants v. Zipes*, —— U.S. ——, 109 S.Ct. 2732, 2735, n. 2, 105 L.Ed.2d 639 (1989).

Cf. *Diamond v. Charles*, 476 U.S. 54, 69–70, 106 S.Ct. 1697, 1707–08, 90 L.Ed.2d 48 (1986) (intervenor lacked standing to contest the merits of a decision enjoining a state statute which attempted to restrict the availability of abortion, despite an award of attorney's fees against him under section 1988); *Planned Parenthood Ass'n v. Ashcroft*, 462 U.S. 476, 494, 103 S.Ct. 2517, 2526, 76 L.Ed.2d 733 (1983) (judgment of lower court invalidating certain restrictions on abortion affirmed in part and reversed in part, and judgment awarding attorney's fees under section 1988 for all hours expended by plaintiffs' counsel remanded for further proceedings to determine a reasonable fee consistent with the dictates of *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

■■ Furthermore, the alleged or actual good faith of a defendant in carrying out the conduct which is found to violate the civil rights laws is not sufficient to deny an attorney's fee award. *See Hutto v. Finney*, 437 U.S. 678, 693, 98 S.Ct. 2565, 2574, 57 L.Ed.2d 522 (1978); *Rose v. Heintz*, 806 F.2d 389, 391–92 (2d Cir.1986). Consequently, the strength of defendants' convictions does not immunize them from the civil rights fee shifting statute.

■ Defendants have not attempted to demonstrate that any of their conduct was intended to further, or did further, the Congressional civil rights policies behind 42 U.S.C. §§ 1981, 1982, 1983, 1985, or 1986, or Title IX of Public Law 92–318 or Title VI of the Civil Rights Act of 1964. *See* 42 U.S.C. § 1988. Therefore, defendants are not in a position analogous to losing civil rights plaintiffs, and the more stringent test for awarding fees against unsuccessful plaintiffs suing under the civil rights statutes is completely inapplicable to this case. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978) (recovery of fees against an unsuccessful civil rights plaintiff appropriate only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation").

■ Similarly, defendants' argument against the award of fees finds no support

in the Supreme Court's recent decision in *Independent Federation of Flight Attendants v. Zipes, supra*, 109 S.Ct. at 2732. In *Zipes*, the Supreme Court held that attorney's fees may be assessed against a blameless intervenor who was not found to be liable to a prevailing plaintiff only if the intervenor's action was "frivolous, unreasonable, or without foundation." *Id.* at 2736. The majority premised its holding on the need for a connection between liability for violation of federal law and liability for attorney's fees under the federal fee shifting statutes. *Id.* at 2737. In this case, of course, defendants have been held liable for violations of plaintiffs' civil rights. Thus, they can take no refuge in case law designed to shield from fee shifting those who have not violated the civil rights laws.

■ In sum, defendants enjoyed no civil or constitutional right to block access to the clinics in violation of the civil rights of plaintiffs. Nor did defendants have any arguable right willfully to disregard the orders of this Court and encourage others to do the same, especially when these orders were narrowly crafted to balance defendants' First Amendment rights with the rights of plaintiffs. *See* 886 F.2d at 1363–64. Accordingly, the Court finds no special circumstances exist which would render an award of attorney's fees in this case anything but just.

The Court concludes that plaintiffs are prevailing parties under section 1988, entitled to an award of attorney's fees and costs.

### 2. *The Amount of the Section 1988 Fee Award*

The Supreme Court recently articulated the following summary of the legal standards for determining the amount of an appropriate fee award.

> A reasonable attorney's fee under § 1988 is one calculated on the basis of rates and practices prevailing in the relevant market, *i.e.*, "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation,"

[*Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984) ], and one that grants the successful civil rights plaintiff a "fully compensatory fee," [*Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983) ], comparable to what is "traditional with attorneys compensated by a fee-paying client." S.Rep. No. 94–1011, p. 6 (1976), U.S.Code Cong. & Admin.News 1976, pp. 5908, 5913. *Missouri v. Jenkins*, — U.S. —, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989).

■ The lodestar method is used to establish the amount of an attorney's fees award under the federal civil rights fee shifting statute. *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989); *Hensley v. Eckerhart, supra*, 461 U.S. at 433, 103 S.Ct. at 1939. The lodestar is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate of compensation for each attorney involved. This calculation serves as a useful starting point for determining the amount of a reasonable fee, as it provides an objective basis on which to make an initial estimate of the value of a lawyer's services. *Hensley v. Eckerhart, supra*, 461 U.S. at 433, 103 S.Ct. at 1939.

■ The ultimate amount of the fee must be determined on the facts of each case, *id.* at 429, 103 S.Ct. at 1937, and the lodestar amount may be adjusted based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974). *E.g., Blanchard v. Bergeron, supra*, 109 S.Ct. at 943–45.[3] Nevertheless, once the applicant for a fee award has established the reasonableness of the claimed rate and the number of hours expended, the resulting lodestar fig-

ure is presumed to be the reasonable fee to which counsel is entitled. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986) ("*Delaware Valley I*"); *Blum v. Stenson, supra*, 465 U.S. at 897, 104 S.Ct. at 1548.

■ In this Circuit, an application for attorney's fees "should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Association for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983). Contemporaneous time records are necessary so that the Court is not faced with an impossible task when asked to determine an appropriate fee amount, and lawyers are not required to expend even more time reconstructing the past in assembling the fee application. *Id.* at 1147–48. The burden to present such records to the Court rests squarely on the party requesting remuneration. *See Hensley v. Eckerhart, supra*, 461 U.S. at 437, 103 S.Ct. at 1941; *Carrero v. New York City Housing Authority*, 685 F.Supp. 904, 909 (S.D.N.Y.1988).

a. Reasonableness of hours requested

Plaintiffs seek reimbursement for 281.9 hours of work by Alison Wetherfield ("Wetherfield"), a staff attorney at the NOW Legal Defense and Education Fund, 330.5 hours of work by David Cole ("Cole"), an attorney for the Center for Constitutional Rights, and 247.25 hours of work by Mary M. Gundrum ("Gundrum"), a staff attorney at the Center for Constitutional Rights. They have not sought to recover for the work done by certain co-

---

**3.** These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability"

of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *E.g., Blanchard v. Bergeron, supra*, 109 S.Ct. at 943 n. 5 (citing *Johnson v. Georgia Highway Express, Inc., supra*, 488 F.2d at 717–19). Usually, however, most of these factors are subsumed within the initial lodestar calculation of hours reasonably expended at a reasonably hourly rate. *United States Football League v. National Football League*, 887 F.2d 408, 415 (2d Cir.1989).

counsel, as, in their billing judgment, this time was duplicative. Nor have they sought fees for substantial time expended by law student interns in assisting in the preparation of this case.[4]

Defendants do not contest the amount of time requested for Wetherfield's efforts, and the Court finds this time amply documented and reasonable.

■■■ Defendants claim that plaintiffs have failed to supply contemporaneous time records for attorneys Gundrum and Cole. Both attorneys, however, have submitted affidavits in which they aver that contemporaneous time records were maintained, and that these records were replicated and submitted to the Court in support of the motion. *See* Declaration of David Cole, filed December 6, 1989 ¶ 6; Declaration of Mary M. Gundrum, filed December 6, 1989 ¶ 6. *Cf. United States Football League v. National Football League,* 704 F.Supp. 474, 477 (S.D.N.Y.) (re-typed computer records satisfied contemporaneous time record requirement), *aff'd,* 887 F.2d 408 (2d Cir.1989).

Defendants have not attempted to submit evidence which calls into question the accuracy and reasonableness of the hours charged, or the facts asserted in the affidavits submitted by plaintiffs' attorneys. *See Blum v. Stenson, supra,* 465 U.S. at 892 n. 5, 104 S.Ct. at 1545 n. 5. As the Third Circuit has explained, when a party opposing a fee application

"has been afforded the opportunity to raise a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure, and declines to do so, no reason occurs to us for permitting the trial court to disregard the uncontested affidavits filed by a fee applicant."

*Northeast Women's Center v. McMonagle,* 889 F.2d 466, 477 (3rd Cir.1989) (citation omitted), *cert. denied,* — U.S. ——, 110 S.Ct. 1788, 108 L.Ed.2d 790 (1990).

In addition, defendants argue only that the time records for attorneys Cole and Gundrum are vague, not that the time they expended was excessive. Contemporaneous time records are sufficiently detailed, however, if the "general subject matter of [the] time expenditures" are identified; "[p]laintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended." *Hensley v. Eckerhart, supra,* 461 U.S. at 437 n. 12, 103 S.Ct. at 1941 n. 12. The Court has reviewed the time records presented by plaintiffs for the work of attorneys Cole and Gundrum, and finds them sufficiently detailed to allow the Court objectively to evaluate the nature and reasonableness of the time expended.

■■■ In the Court's view, the total time requested by plaintiffs for the work of the three attorneys is reasonable in light of the circumstances under which they litigated this case. This action presented novel and difficult questions of law involving section 1985(3), and plaintiffs' skillful representation was instrumental in obtaining the success they achieved before this Court and the Court of Appeals.

■■■ Furthermore, the Court finds that plaintiffs' utilization of a team of attorneys was warranted given defendants' continual acts in violation of the Court's orders, the need to respond to these acts on short notice, the complexity of the issues involved, and the battery of counsel retained by defendants. *See Seigal v. Merrick,* 619 F.2d 160, 164 (2d Cir.1980) (plaintiff's staffing conferences or court appearances with more than one lawyer may be warranted, especially when "confronted with a bevy of hostile lawyers for the multiple parties on the other side"); *McKever v. Vondollen,* 681 F.Supp. 999, 1002–03 (N.D.N.Y.1988) (compensation for the use of multiple attorneys at trial reasonable). Indeed, defendants do not contend that plaintiffs' coun-

---

**4.** Plaintiffs have also excluded time spent inefficiently or on certain administrative tasks. *See* Declaration of Alison Wetherfield, filed December 6, 1989 at ¶ 6; Declaration of Mary M. Gundrum, filed December 6, 1989 at ¶ 6. In addition, the fee request does not include any time for which plaintiffs have already been compensated in connection with their earlier motion for fees pursuant to Rule 37(d), Fed.R. Civ.P.

sel failed to work efficiently, or that their work was duplicative.

■ Moreover, the confrontational and litigious posture adopted by defendants throughout much of this litigation placed heightened demands on plaintiffs' counsel, increasing the amount of time counsel needed to spend to defend plaintiffs' rights and monitor the enforcement of the Court's orders. Given the foregoing, the Court concludes that the number of hours for which plaintiffs seek compensation is reasonable.

### b. Reasonableness of rates

■ Plaintiffs seek hourly rates of $160 for Wetherfield, $170 for Cole, and $210 for Gundrum. Defendants have not objected to the reasonableness of the rates suggested by plaintiffs.

Prevailing parties under the civil rights fee shifting statute are entitled to reasonable hourly rates which fall within the prevailing marketplace rates "in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson, supra,* 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11.

Plaintiffs' counsel all work for non-profit organizations which have not billed plaintiffs for their time. The suggested rates were arrived at by looking to the rates charged by major New York City law firms with litigation practices. This was proper, as in determining the elements of reasonable attorney's fees, courts have consistently looked to the marketplace as a guide, *Missouri v. Jenkins, supra,* 109 S.Ct. at 2470, and in determining whether the requested rates fall within the prevailing market rates, "rates charged in private representations may afford relevant comparisons." *Blum v. Stenson, supra,* 465 U.S. at 896 n. 11, 104 S.Ct. at 1547 n. 11. *See Miele v. New York State Teamsters Conference Pension & Retirement Fund,* 831 F.2d 407, 408–09 (2d Cir.1987) (court may apply prevailing market rates for "Wall Street" associates to fee award for non-profit organization). As the work in this case spans only the past two years, it was also appropriate to use current, rather than historic rates. *See New York State Association for Retarded Children v. Carey, supra,* 711 F.2d at 1153.

The Court finds these rates to be reasonable, given the evidence presented by plaintiffs of the rates charged by private law firms in New York City, counsel's experience in civil rights litigation, the high quality of counsel's representation and the degree of success counsel achieved in the lawsuit. *Cf. County of Suffolk v. Long Island Lighting Co.,* 710 F.Supp. 1477, 1481 (E.D.N.Y.1989) (partners awarded between $175–275 per hour, associate awarded $175 per hour).

### c. Enhancement of the lodestar

Plaintiffs argue that the lodestar should be enhanced by a multiplier of 2.0. Defendants oppose any enhancement.

■ The Supreme Court has explained that an enhancement of a fee award is proper only in certain rare and exceptional cases. *Delaware Valley I, supra,* 478 U.S. at 565, 106 S.Ct. at 3098; *Blum v. Stenson, supra,* 465 U.S. at 898–901, 104 S.Ct. at 1548–1550. *See also Krieger v. Gold Bond Building Products,* 863 F.2d 1091, 1099 (2d Cir.1988). The purpose of the fee-shifting statute is not to replicate exactly a private fee arrangement, but to ensure that private parties will be able to retain counsel to further the objectives of the civil rights statutes. *See Delaware Valley I, supra,* 478 U.S. at 565, 106 S.Ct. at 3098. The applicant bears the burden of overcoming the presumption that the lodestar reflects a reasonable fee award and establishing that an enhancement is appropriate. *See Soler v. G & U, Inc.,* 658 F.Supp. 1093, 1102–03 (S.D.N.Y.1987).

■ Plaintiffs argue that an enhancement is warranted in this case to compensate their attorneys for the risk of loss associated with their representation. Plaintiffs had no funds with which to retain counsel. Affirmation of Noreen Connell, filed January 24, 1990 at ¶ 3. Counsel agreed to represent them on a contingency fee basis, with compensation for their efforts dependent on plaintiffs' success on the merits of the civil rights claim and a

statutory award of attorney's fees against defendants. *Id.* Plaintiffs maintain that this contingency arrangement created a risk of loss which merits an enhancement of the lodestar.[5]

In and of itself, the existence of a contingency arrangement is not a sufficient basis for increasing the amount of the fee award above the lodestar. *Lewis v. Coughlin,* 801 F.2d 570, 575 (2d Cir.1986). Under certain circumstances, however, representing a client on a contingent basis creates a risk of nonpayment that may warrant an adjustment of the fee award to compensate the attorney for the assumption of this risk. *Id. See also Delaware Valley II; Wells v. Bowen,* 855 F.2d 37, 45 (2d Cir. 1988). The Second Circuit has explained that, in considering whether an enhancement is appropriate for the contingency factor, the rationale that should guide the court's discretion is whether without the possibility of a fee enhancement, competent counsel might refuse to represent civil rights clients thereby denying them effective assess to the courts. *Friends of the Earth v. Eastman Kodak Co.,* 834 F.2d 295, 298 (2d Cir.1987) (citing *Lewis v. Coughlin, supra,* 801 F.2d at 576).[6]

Plaintiffs initially encountered difficulty in securing representation from attorneys in private practice. Affirmation of Noreen Connell, *supra* at ¶ 2. No evidence has been presented, however, regarding the reasons these other attorneys refused to represent plaintiffs, or that without a fee enhancement for risk of loss private attorneys would be unwilling to undertake similar cases which ultimately further the objectives of the civil rights statutes. *Cf. Wilkinson v. Forst,* 729 F.Supp. 1416, 1419 (D.Conn.1990) (25% enhancement justified given pervasive difficulties plaintiff encountered in attracting counsel). Furthermore, the Court has not been presented with evidence on how the relevant market

---

5. The question of whether a fee award under the fee shifting statutes can be enhanced for the risk of loss associated with contingent representation has divided the Supreme Court. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987) (plurality opinion reversing the enhancement of a fee award for contingency of success) (*"Delaware Valley II"*).

In *Delaware Valley II,* four justices in the plurality (Chief Justice Rehnquist, and Justices White, Powell and Scalia) concluded that "enhancement of a reasonable lodestar fee to compensate for assuming the risk of loss is impermissible under the usual fee shifting statutes," *id.* at 727, 107 S.Ct. at 3087, and that even if such enhancement was permissible, it may occur only in "exceptional cases" where evidence is presented that "without risk enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market." *Id.* at 730–31, 107 S.Ct. at 3089–90.

Justices Blackmun, Brennan, Marshall and Stevens dissented. They maintained that enhancement for contingency is appropriate when counsel is not able to mitigate the risk of nonpayment and when other economic risks are aggravated by the contingency arrangement. *Id.* at 747, 749, 107 S.Ct. at 3098, 3099 (Blackmun, J., dissenting).

Justice O'Connor, concurring, agreed with the four dissenting justices that enhancement for the risks of contingent representation is proper under the fee shifting statutes, but concluded that the record in the lower court did not support an enhancement. Therefore, she joined in the plurality opinion reversing the enhancement of the fee award. *Id.* at 734, 107 S.Ct. at 3091 (O'Connor, J., concurring).

Justice O'Connor further agreed with the dissenters that "compensation for contingency must be based on the difference in market treatment of contingent fee cases *as a class,* rather than an assessment of the "riskiness" of any particular case." *Id.* at 731, 107 S.Ct. at 3089 (emphasis in the original). She noted, however, that contingency enhancements should be reserved for those situations where the "applicant can establish that without an adjustment for risk the 'prevailing party would have faced substantial difficulties in finding counsel in the local or relevant market,'" *id.* at 733, 107 S.Ct. at 3091 (quoting plurality opinion at 731, 107 S.Ct. at 3089), and that the fee applicant seeking an enhancement must bear the burden of proving the degree to which the relevant market compensates for contingency. *Id.*

Thus, a majority of the Supreme Court agreed that an enhancement of a fee award to compensate for the risk of loss inherent in a contingent fee relationship is permissible, at least under certain circumstances.

6. The Second Circuit stated that this rationale "is similar to that taken by the plurality and Justice O'Connor in [Delaware Valley II]." *Friends of the Earth v. Eastman Kodak Co., supra,* 834 F.2d at 298. The Court notes that this approach is also consistent with the purpose behind section 1988: "to make sure that competent counsel was available to civil rights plaintiffs." *Blanchard v. Bergeron, supra,* 109 S.Ct. at 944.

compensates for contingency. *See Delaware Valley II*, 483 U.S. at 733, 107 S.Ct. at 3090–91 (O'Connor, J., concurring); *Meriwether v. Coughlin*, 727 F.Supp. 823, 829–30 (S.D.N.Y.1989). Thus, an enhancement for risk of loss is not called for on the record in this case.

The lack of an enhancement is not meant in any way to disparage the outstanding representation afforded plaintiffs by their counsel, the degree of success achieved, or the contentious nature of the litigation plaintiffs undertook against multiple, obstreperous defendants. These factors, however, have already been taken into account in determining the reasonable fee award. *See Krieger v. Gold Bond Building Products, supra*, 863 F.2d at 1099–1100.

### d. Costs

Plaintiffs seek $4,294.31 in costs. Under the civil rights fee shifting statutes, a court will generally award "those reasonable out-of pocket expenses incurred by the attorney and which are normally charged fee paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir.1987) (quoting district court). A prevailing party may be reimbursed for expenditures which add to the proceeding and are not part of the attorney's ordinary overhead. *See Carrero v. New York City Housing Authority, supra*, 685 F.Supp at 909. Defendants have not challenged the reasonableness of the amount of costs requested, and the Court finds that plaintiffs have adequately detailed the breakdown of the costs incurred and that these expenditures were reasonable. *See Kuzma v. Internal Revenue Service*, 821 F.2d 930, 933–34 (2d Cir. 1987) (photocopying, telephone and postage expenses compensable).

Thus, the Court concludes that, under section 1988, plaintiffs are entitled to an award of attorney's fees in the amount of $153,211.50 and costs in the amount of $4,294.31.

### B. *Fee Application Against the Contemnors*

Plaintiffs seek a total of $121,073.50 in attorney's fees and costs from the contemnors as authorized by this Court's decision of February 27, 1990. This amount is broken down into two phases. The first phase lasted from approximately April 1989 until July 1989, during which time plaintiffs' counsel collected evidence of the violations of this Court's orders and drafted plaintiffs' Order to Show Cause for Civil Contempt and supporting documents. This phase included service of process on all contemnors, an initial full day court appearance on July 28, 1989, when all counsel were present, and a court appearance on August 10, 1989, to address motions to dismiss. Plaintiffs have excluded from this phase all hours spent concerning those individuals named in the Order to Show Cause but not found in contempt. Plaintiffs assert, without contradiction, that the fees and costs incurred during this phase can fairly be assessed against all contemnors.

The second phase includes the time spent by plaintiffs in preparing for and conducting the evidentiary hearing on the contempt motion on August 9, 10, 15 and 16, 1989 against A. Nathanson, B. Nathanson and Pearson. This phase also includes hours expended drafting post-hearing submissions and a motion requesting that a portion of the transcript be stricken and sanctions be imposed on the Nathansons' attorney. Plaintiffs seek compensation for phase two fees and costs solely from those contemnors involved in the evidentiary hearing.

For phase one, plaintiffs seek compensation for 237.15 hours of Gundrum's time, 91.15 hours of Wetherfield's time and 17 hours expended by Cole. For phase two, plaintiffs seek compensation for 134.5 hours of Gundrum's time and 134.5 hours of Wetherfield's time. The rates requested are the same as those set forth in their application under section 1988. In addition, plaintiffs seek reimbursement for $3,487.83 and $419.17 in costs for phase one and phase two, respectively. In total, plaintiffs' request $70,889.33 for attorney's fees and costs for phase one and $50,184.17 for attorney's fees and costs for phase two.

The contemnors have not challenged the reasonableness of the time spent by plaintiffs' counsel, the rates sought, or the amount of costs incurred in either phase. Plaintiffs have provided the Court with documentation of the time and costs expended and the Court finds the time and costs reasonable under the circumstances.

 Talluto, La Penna, White and McMonagle argue that the award of attorney's fees upon a finding of contempt was improper, despite their willful violations of this Court's orders, because they claim attorney's fees may only be awarded under section 1988 in a civil rights action. No relevant support has been supplied in support of this argument, and the Court rejects the notion that section 1988 in some way immunizes a contemnor from an award of attorney's fees, or abrogates the Court's authority to vindicate its own orders and compensate an aggrieved party for the expense of defending those orders from purposeful violations.

 A. Nathanson argues that she should not be liable for any of plaintiffs' attorney's fees or costs. She maintains that, because she prevailed on the allegation that she violated the May 4 Order she should be entitled to an award of fees for that count, and this should "wash" with the fees sought for her adjudged violation of the October 27 Order. Pearson joins in this argument. The Court disagrees.

While discharged contemnors may be able to recover "against the complainant for costs and disbursements and a reasonable counsel fee," any such award is committed to the discretion of the Court. Rule 43(d), Civil Rules of the United States Courts for the Southern and Eastern Districts of New York. Such an award is completely unwarranted here, as the evidence submitted in support of the allegations that A. Nathanson and Pearson violated the May 4 Order was not insubstantial, and supplied an adequate basis to support plaintiffs' filing of the motion against them.[7] Moreover, it was A. Nathanson's denial of the facts relating to her violation of the October 27 Order, and Pearson's denial of the facts relating to his violation of the Permanent Injunction, which resulted in much of the expense of the evidentiary hearing. Plaintiffs, whose rights were violated, should not be forced to bear the costs of vindicating those rights and enforcing the Court's orders.

The Court agrees, however, that A. Nathanson and Pearson, as well as the other contemnors, should only be required to bear the costs associated with the violation or violations they were found to have committed. Accordingly, each contemnor was made liable only for "a pro rata share of the attorney's fees and cost incurred by plaintiffs as a result of bringing the contempt motion against him or her." February 27 Opinion, at 54. The Court now turns to determine the pro rata share for each contemnor.

### 1. Allocation of Phase One Fees and Costs

[28] The Court believes it is appropriate to assess the total attorney's fees and costs incurred against all contemnors in phase one in accordance with the number of days each contemnor was found to have violated the Court's orders, out of the number of violations alleged by plaintiffs.[8] For phase one, plaintiffs alleged that the contemnors, collectively, committed a total of twenty-two (22) violations of the Court's orders. The Court found twenty (20) distinct viola-

---

7. Similarly, in the Court's view B. Nathanson's request for fees is unwarranted, as the evidence adduced regarding plaintiffs' claim that he knowingly violated the Permanent Injunction presented a close factual question.

8. Plaintiffs suggest that the Court apportion the phase one fees and costs according to each contemnor's percentage share of the overall fines imposed. Because fines were not imposed

for every violation that contemnors were found to have committed, and because successive violations of the Permanent Injunction resulted in a doubling of the fine, the Court believes that the measure it has followed better imposes upon the various contemnors a pro rata share of the attorney's fees and costs incurred as a consequence of their willful violations of the Court's orders.

tions had occurred in its February 27 Opinion. The pro rata share of the phase one fees and costs for each contemnor is as follows:

| Contemnor | Number of Violations Found | Percentage of Violations Alleged |
|---|---|---|
| Terry & Operation Rescue | 4 | 18.2% |
| Herlihy | 1 | 4.5% |
| B.O.R.N. | 1 | 4.5% |
| Lee | 4 | 18.2% |
| Foreman | 2 | 9.1% |
| McMonagle | 1 | 4.5% |
| White | 1 | 4.5% |
| Talluto | 2 | 9.1% |
| La Penna | 2 | 9.1% |
| A. Nathanson | 1 | 4.5% |
| Pearson | 1 | 4.5% |

The $70,889.33 in phase one fees and costs is apportioned as follows:

| Contemnor | Percentage | Amount |
|---|---|---|
| Terry & Operation Rescue | 18.2% | $12,901.86 |
| Herlihy | 4.5% | $ 3,190.02 |
| B.O.R.N. | 4.5% | $ 3,190.02 |
| Lee | 18.2% | $12,901.86 |
| Foreman | 9.1% | $ 6,450.93 |
| McMonagle | 4.5% | $ 3,190.02 |
| White | 4.5% | $ 3,190.02 |
| Talluto | 9.1% | $ 6,450.93 |
| La Penna | 9.1% | $ 6,450.93 |
| A. Nathanson | 4.5% | $ 3,190.02 |
| Pearson | 4.5% | $ 3,190.02 |

### 2. Allocation of Phase Two Fees and Costs

The Court believes it is appropriate to apportion the phase two attorney's fees and costs among those contemnors involved in these proceedings based on the number of violations they were found to have committed out of the number of violations alleged by plaintiffs.[9] Five (5) distinct violations of the Court's orders were at issue during phase two, two (2) violations each charged to A. Nathanson and Pearson, and one (1) violation charged to B. Nathanson. Inasmuch as A. Nathanson and Pearson were each adjudged in contempt on one violation, they each must bear one-fifth (1/5) or twenty percent (20%) of the total phase two attorney's fees and costs incurred by plaintiffs.

The Nathansons argue that the total phase two award should not include attorney's fees expended with regard to the

9. Plaintiffs suggest that A. Nathanson and Pearson should each be liable for one-third (⅓) of the phase two fees and costs, and do not seek compensation for the remaining one-third (⅓) attributable to B. Nathanson. The Court, however, believes it is more equitable to apportion the fees and costs according to the violations proved by plaintiffs, rather than the number of respondents involved, as this method reflects that A. Nathanson and Pearson were successful in defending against the allegations that they violated the May 4 Order.

unsuccessful motion for sanctions asserted by plaintiffs against the Nathansons' attorney. The Court agrees. Accordingly, the phase two attorney's fees will be reduced by 21.4 hours, the time spent by Alison Wetherfield in drafting that motion, leaving a total request for phase two of $46,760.17.

These phase two fees are apportioned as follows:

| Contemnor | Percentage | Amount |
|---|---|---|
| A. Nathanson | 20% | $9,352.03 |
| Pearson | 20% | $9,352.03 |

Accordingly, the total share of the fees and costs incurred during phase one and phase two for which A. Nathanson and Pearson are each liable is $12,542.05.

C. Washburn's Motion to Vacate the Imposition of Rule 11 Sanctions

■ The Court found that Washburn's conduct in resubmitting a cross-motion to dismiss which had previously been rejected by the Court, after having been repeatedly warned that the resubmission of the cross-motion without additional support would expose him to the risk of Rule 11 sanctions, was vexatious and warranted sanctions. February 27 Opinion 732 F.Supp. at 412.

Washburn argues that an evidentiary hearing was required before sanctions could be imposed in order to test the extent of his inquiry into the legal positions the Court found to be frivolous. From this argument it is apparent that he misconstrues the basis for the imposition of sanctions. While the Court did find that many of the arguments he raised in the cross-motion to dismiss were manifestly frivolous, Rule 11 sanctions were not imposed for the filing of the original cross-motion, but only for the resubmission of the cross-motion without additional support. After the initial cross-motion was denied Washburn was explicitly warned that sanctions might result if he further burdened plaintiffs and the Court by resubmitting the cross-motion without additional support. No disputed factual issues were involved in determining whether the resubmission of the motion violated an objective standard of reasonableness. Thus, an evidentiary hearing was not required.

■ Washburn also maintains that the imposition of sanctions should be vacated because the Rule 11 motion was (1) withdrawn by plaintiffs, (2) prematurely filed, and (3) improperly served. None of these arguments have merit, and the Court will address them only briefly.

In a letter to the Court, dated November 8, 1989, plaintiffs' counsel responded to Washburn's Memorandum and Affidavit in Opposition to the Rule 11 motion.[10] Washburn asserts that, in this letter, plaintiffs' sought to withdraw their Rule 11 motion and therefore the Court should not have ruled on it. A fair reading of the letter, however, provides no support for such a conclusion. To the contrary, it is clear that the letter was intended to serve as plaintiffs' reply to the opposition papers Washburn had filed, and that plaintiffs' were not seeking to withdraw their Rule 11 motion.[11]

In fact, the letter set forth the return date of the Rule 11 motion and indicated that no oral argument was requested or scheduled to occur. Plaintiffs, in concluding the letter, responded to Washburn's argument that the Rule 11 motion was prematurely filed because the Court had not yet found the resubmission of the motion to be frivolous, by requesting that "the Court first consider Mr. Washburn's re-

---

**10.** Washburn's submissions in opposition to the Rule 11 motion were received by the Court, first in handwritten and then in typed form, during October and November, 1989, and the Court considered and rejected the arguments raised therein prior to imposing Rule 11 sanctions.

**11.** That plaintiffs wished to continue to pursue their Rule 11 motion is clear from the opening lines of the letter, where plaintiffs explain that they "wish to rest on the legal arguments in their memorandum dated September 22, 1989" and "write this letter only to clarify confusion raised by Attorney Washburn's Rule 11 Memorandum and Affidavit in Opposition."

newed motion and then plaintiffs' motion for sanction." This, of course, reflected only an acknowledgement of the process which the Court would necessarily follow prior to ruling on the Rule 11 motion, and in no way altered the fact that the parties had a full opportunity to present their arguments regarding the Rule 11 motion, and did present these arguments in their submissions to the Court.

Finally, Washburn's motion to vacate the imposition of sanctions indicates that he was properly served with the Rule 11 motion, and any complaints that other parties may have regarding service of the Rule 11 motion are inapposite.

Thus, there is no basis for the Court to vacate the imposition of Rule 11 sanctions, and Washburn's motion is denied.

### 1. *The Amount of the Sanction*

██ The Court imposed Rule 11 sanctions against Washburn in the amount of the attorney's fees and costs reasonably incurred by plaintiffs in responding to his renewed cross-motion to dismiss and in filing their motion for sanctions. February 27 Opinion at 50. Plaintiffs seek $11,712.47 for fees and costs.[12] They have detailed these expenses in their application for attorney's fees against the contemnors, and Washburn has not challenged the number of hours expended, the rates sought by the attorneys involved, or the overall reasonableness of the amount requested. Inasmuch as plaintiffs have adequately documented their time and expenditures, the Court will not modify the amount requested. *Cf. Northeast Women's Center v. McMonagle, supra,* 889 F.2d at 477. Thus, Washburn is liable to plaintiffs for $11,712.47 in attorney's fees and costs as a sanction under Rule 11.

### CONCLUSION

Plaintiffs are prevailing parties under 42 U.S.C. § 1988 entitled to an award of attorney's fees and costs from defendants. Their motion for attorney's fees under section 1988 is granted to the extent that defendants are liable for $153,211.50 in attorney's fees and $4,294.31 in costs. Plaintiffs' fee application against the various contemnors pursuant to the Court's February 27 Opinion is granted to the extent that fees and costs are awarded against the various contemnors in the following amounts:

| | |
|---|---|
| Terry & Operation Rescue | $12,901.86 |
| Herlihy | $ 3,190.02 |
| B.O.R.N. | $ 3,190.02 |
| Lee | $12,901.86 |
| Foreman | $ 6,450.93 |
| McMonagle | $ 3,190.02 |
| White | $ 3,190.02 |
| Talluto | $ 6,450.93 |
| La Penna | $ 6,450.93 |
| A. Nathanson | $12,542.05 |
| Pearson | $12,542.05 |

Washburn's motion to vacate the imposition of Rule 11 sanctions against him is denied. Washburn is liable to plaintiffs for $11,712.47 in attorney's fees and costs incurred as a result of his conduct in violation of Rule 11.

Settle orders on notice.

---

**12.** Plaintiffs seek to recover for seven hours of work by Wetherfield, 39.25 hours of work by Gundrum, and 21 hours of work by attorney Elizabeth Malcolm ("Malcolm"), a volunteer attorney at the NOW Legal Defense and Education Fund. Plaintiffs request an hourly rate of $110 for Malcolm's time, which is consistent with the prevailing marketplace rates for attorneys with comparable experience in private practice.