George JACKSON, William Donald Stanford, Alonzo Hopkins, Kathryn Rogers, Francine Grier, Carlos E. Mackey, Elaine Nesin and David Ford, Plaintiffs,

v.

The NASSAU COUNTY BOARD OF SUPERVISORS, Gregory P. Peterson, Lewis Yevolli, May W. Newburger, Bruce Nyman, Thomas Suozzi and Richard V. Guardino, in their official capacities as members of the Nassau County Board of Supervisors, County of Nassau, Nassau County Board of Elections, Joseph Cairo and Richard S. Blum, in their official capacities as commissioners of the Nassau County Board of Elections, Defendants.

No. CV 91–3720 (ADS).

United States District Court,
E.D. New York.

Oct. 18, 1994.

Fried, Frank, Harris, Shriver & Jacobsen, New York City (Honey L. Kober, of counsel), for plaintiff David Ford.

Arthur N. Eisenberg, The New York Civ. Liberties Union Foundation, New York City, for plaintiff George Jackson.

Judith Reed, New York City, for plaintiffs Alonzo Hopkins, Kathryn Rogers, Francine Grier and Carlos E. Mackey, N.A.A.C.P. Legal Defense and Educational Fund.

Shaw, Pittman, Potts & Trowbridge, New York City (Kenneth A. Caruso), and Shaw, Pittman, Potts & Trowbridge, Washington, DC (Charles J. Cooper, Alexander W. Joel, of counsel) for defendant Sup'rs, Gregory P. Peterson and Richard V. Guardino, Jr.

Jeffrey M. Wice, and Wayne R. Arden, Washington, DC, for defendant Sup'rs, Lewis Yevolli, May Newburger, Bruce Nyman and Thomas Suozzi.

Owen Walsh, County Atty., Mineola, NY, for defendant Nassau County.

Jaeger, Mari & Block, Islandia, NY (Steven M. Jaeger, of counsel), for defendant Richard S. Blum.

Kwiatkowski & Ryan, Floral Park, NY (John Ryan, of counsel), for defendant Bd. of Elections Com'r Cairo.

Arthur D. Goldstein, Great Neck, NY, for Election Com'r Matthews.

Edwin J. Wesely, Special Master, Winthrop, Stimson, Putnam & Roberts, New York City.

## DECISION AND ORDER RE: SPECIAL MASTER'S FEE

SPATT, District Judge:

Edwin J. Wesely, Esq., the Court-appointed Special Master in this case, submitted an application to the Court for payment of his fees and disbursements covering the period July 8, 1994 through September 26, 1994. The total amount of the fee and disbursement application is for the sum of $254,-622.04, and includes the services of the Special Master, the law firm of Winthrop, Stimson, Putnam & Roberts ("Winthrop Stimson") and Dr. Alan Gartner, Ph.D, Dean for Research of the Graduate School & University Center of the City University of New York and consultant to the Special Master.

## BACKGROUND

In a decision dated April 14, 1993, this Court declared that the weighted voting system utilized by the Nassau County Board of Supervisors was unconstitutional, because it violated the one person, one vote principle encompassed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Court's decision is published at *Jackson v. Nassau County Board of Supervisors*, 818 F.Supp. 509 (E.D.N.Y.1993), and familiarity with the decision is presumed.

On June 30, 1993, the Court issued an order which, *inter alia*, stated that the Court would defer to the legislative branch of the county government with respect to attempts to bring itself into compliance with the Court's April 14, 1993 decision. To help formulate a remedial plan, the County Executive of Nassau County, pursuant to the Nassau County Charter, appointed a seventeen member Nassau County Commission on Government Revision. In an exercise of its equitable powers, the Court set forth a timetable in the June 30, 1993 order for the parties and Commission on Government Revision to meet, establishing deadlines regarding the formulation, adoption and implementation of any remedial plan.

According to the schedule set forth in the Court's order, the Commission on Government Revision was to present its final recommendation of a proposed remedial plan to the Nassau County Board of Supervisors by June 1, 1994. The Board of Supervisors were to have agreed to the Commission's proposed plan, or have adopted their own remedial plan, by June 15, 1994. On that date the Board of Supervisors were also to have enacted a local law, or requested the New York State legislature to enact a general law, authorizing the residents of Nassau County to vote on the proposed plan in a general referendum.

On June 1, 1994, the Commission on Government Revision presented the Board of Supervisors with a remedial plan that essen-

tially proposed the creation of nineteen single-member legislative districts. Despite every previous deadline set by the Court having been met by the parties, the Board of Supervisors failed to agree to the proposed districting plan presented to it by the Commission on Government Revision, or to any other remedial plan, by the June 15, 1994 deadline.

In an effort to permit the Board of Supervisors to overcome their impasse and reach an agreement on a districting plan for Nassau County, the Court extended its offices to the Board of Supervisors and, on July 6, 1994, participated in a long negotiating session with the parties and Board of Supervisors. Notwithstanding this effort, the deadlock among the Supervisors persisted.

### THE SPECIAL MASTER'S SERVICES.

As a result of the deadlock and consequential failure to approve a districting plan by the Board of Supervisors, the Court was compelled to act and to devise its own legislative districting plan for the County. Towards this end, on July 8, 1994 the Court issued an order appointing Edwin J. Wesely, Esq. as the Special Master in this case pursuant to Rule 53 of the Federal Rules of Civil Procedure. By the terms of the order, and pursuant to Fed.R.Civ.P. 53(a), the Special Master was given plenary powers to take all steps necessary or desirable to:

1. hear, consider, report and recommend to this Court a legislative districting plan for the County of Nassau, New York, including any amendments to the Nassau County Charter necessary to effectuate such a districting plan; and

2. perform such further or additional action that the Court may direct and instruct the Special Master to undertake.

The order also directed that the Special Master undertake the actions set forth in the Order *"with all due dispatch,"* (emphasis added) and with the objective of adhering to the timetable delineated in this Court's order of June 30, 1993.

With regard to retaining the services of other professionals, the Court's order of July 8, 1994 authorized the Special Master to utilize, if necessary, the services of any demo-

graphic, computer or other consultants necessary for the completion of the actions set forth in the order. The order also authorized the Special Master to utilize the services of other persons in the law firm of Winthrop, Stimson, Putnam & Roberts when in the judgment of the Special Master it was more cost-effective to do so.

Finally, with respect to the compensation of the Special Master, the Court's order provided that,

> the compensation of the Special Master and such other consultants or persons shall be paid in such amounts as directed by the Court, which compensation shall be assessed against the Nassau County Board of Supervisors and the County of Nassau in the manner directed by the Court and shall be paid at such times as directed by the Court.

Under the Court's direction to undertake his actions with "due dispatch" and to adhere to the Court's timetable, the Special Master immediately ceased all his other work and with a highly competent staff of attorneys and experts virtually worked around-the-clock, seven days a week for the following three week period in an effort to formulate a proposed districting plan for the Court. The Special Master held public hearings in the Courthouse on weekends, as well as on several evenings, to listen to the positions of the parties and the public. In addition, the entire record of hearings, testimony and the work product of the Commission on Government Revision, comprising a work period of over 9 months, had to be reviewed. Since the standards governing a court formulated redistricting plan are more stringent than those governing a similar plan created by the legislature, the Special Master and his consultant concentrated their energies on devising a districting plan that (i) contained the least amount of district-wide population deviation possible, and (ii) was the most fair politically.

In the Court's view, the Special Master performed his duties in a highly professional and outstanding manner. Within three weeks, namely by August 1, 1994, a draft forty-five page proposed report and accompanying districting plan was presented to the

Court by the Special Master for review, revision if necessary and approval. However, on the next day, August 2, 1994, the Nassau County Board of Supervisors agreed to a compromise version of the districting plan initially presented to them by the Commission on Government Revision. Accordingly, the Special Master's draft report and districting plan were not revealed to the parties or to the public, pending the outcome of the November 1994 referendum on the compromise districting plan agreed to by the Board of Supervisors.

## THE SPECIAL MASTER'S FEE AND COSTS APPLICATION

The Special Master submitted his initial application for fees and disbursements on August 16, 1994, covering services and expenses incurred during the period July 8, 1994 through August 16, 1994. Oral argument on the application and the objections to it was held on September 22, 1994. On September 30, 1994, a supplemental application was submitted to the Court by the Special Master for services not set forth on the initial application, and for fees and disbursements incurred during the period August 17, 1994 through September 26, 1994.

In total, the Special Master requests compensation of $213,993.78 in fees for 836.8 hours of work, and reimbursement of $13,511.12 in disbursements. These fees and disbursements cover the services of the Special Master and his staff of attorneys at Winthrop Stimson. In addition, the Special Master requests that his demographic consultant, Dr. Gartner, be compensated in the amount of $27,117.14, representing $26,550 for 132.75 hours of work paid at the rate of $200 per hour, and $567.14 in expenses. The following is a summary of the Special Master's combined fee and disbursement applications, including a delineation of fees for services performed after August 16, 1994:

### FEES

| | Hours | Rate | Total |
|---|---|---|---|
| Edwin J. Wesely | 163.50 | $380 | $62,130.00 |
| Post 8/16/94 | 29.28 | " | 11,126.40 |
| TOTAL | 192.78 | | $73,256.40 |
| David G. Keyko | 118.50 | $340 | $40,290.00 |
| Daniel A. Lowenthal, III | 162.75 | $250 | $40,687.50 |
| Post 8/16/94 | 17.25 | " | 4,312.50 |
| TOTAL | 180.00 | | $45,000.00 |
| Armen H. Merjian | 225.50 | $195 | $43,972.50 |
| Post 8/16/94 | 4.75 | " | 926.25 |
| TOTAL | 230.25 | | $44,898.75 |
| Takemi Ueno | 11.75 | $120 | $ 1,410.00 |
| Summer Interns | 32.50 | $ 98 | $ 3,185.00 |
| Paralegal, Managing Attorney's office and other support staff | 37.75 | $ 92.19 | $ 3,480.17 |
| Post 8/16/94 | 33.25 | 74.39 | 2,473.46 |
| TOTAL | 71.00 | | $ 5,953.63 |
| TOTAL HOURS AND FEES | 836.78 | | $213,993.78 |

### DISBURSEMENTS

| | |
|---|---|
| Telecopy and Telephone | $ 916.27 |
| Photocopying | 1,497.47 |
| Postage, courier and messengers | 99.93 |
| Document preparation | 3,578.38 |
| Travel and transportation | 1,793.03 |

| | |
|---|---:|
| Meals | 396.78 |
| Computer search fees | 5,229.26 |
| **TOTAL DISBURSEMENTS** | **$13,511.12** |

Dr. Alan Gartner

| | |
|---|---:|
| Fees 132.75 hours at $200/hour | $26,550.00 |
| Expenses | 567.14 |
| **TOTAL** | **$27,117.14** |

As used in this opinion, the term "fee application" refers to the entire application for fees and disbursements by the Special Master and Dr. Gartner, unless otherwise indicated.

## APPLICABLE STANDARDS

1. *Standard for Awarding a Fee to a Special Master.*

The compensation of a Special Master is governed by Fed.R.Civ.P. 53(a), which states in relevant part that, "[t]he compensation to be allowed to a special master shall be fixed by the court, and shall be charged upon such of the parties ... as the court may direct."

 Fixing the special master's fee is a matter left to the discretion of the Court. Factors that a court may consider in determining the reasonableness of a special master's fee include the difficulty of the issues presented, the thoroughness of the master's services, the time spent by the master on the project, her or his ability and distinction, the importance of the matter involved, and the assistance that the master has given to the final disposition of the issues that were referred to her or him. *American Safety Table Comp. v. Schreiber,* 415 F.2d 373, 380 (2d Cir.1969), *cert. denied,* 396 U.S. 1038, 90 S.Ct. 683, 24 L.Ed.2d 682 (1970); *accord Fund for Accurate & Informed Representation, Inc. v. Weprin,* 1992 WL 512410 at *3, 1992 U.S.Dist. LEXIS 21617 at *11–12 (N.D.N.Y. Dec. 23, 1992) (the quality of the special master's work in light of the complexity of the case is an important consideration in determining the reasonableness of the fee).

Moreover, in discussing the compensation of a special master, the United States Supreme Court has stated that, generally, a special master should be compensated at a rate higher than those of judicial officers performing similar duties:

[the special master] should be adequately remunerated for actual work done, time employed and the responsibility assumed.... [W]hile salaries prescribed by law for judicial officers performing similar duties are valuable guides, a higher rate of compensation is generally necessary in order to secure ability and experience in an exacting and temporary employment which often interferes with other undertakings.

*Newton v. Consolidated Gas Co.,* 259 U.S. 101, 105, 42 S.Ct. 438, 439, 66 L.Ed. 844 (1922).

Although not specifically applicable to the determination of a special master's fee, the "lodestar method" that is utilized to determine awards of attorneys' fees in civil cases is a useful guide in helping to determine the reasonableness of a special master's fee application. *See Weprin,* 1992 WL 512410 at *4, 1992 U.S.Dist. LEXIS 21617 at *13 (courts may consider the standard rates in the community in determining the special master's fees); *cf. United States v. Yonkers Board of Education,* 108 F.R.D. 199, 201 (S.D.N.Y.1985). Indeed, the lodestar method would be particularly useful in this case with respect to the reasonableness of the fees charged by the attorneys at Winthrop Stimson who worked with the Special Master. Accordingly, a brief review of the law governing the judicial determination of attorneys' fees in civil cases is in order.

2. *Calculation of Attorney's Fees in a Civil Case.*

██ An award of attorney's fees to a prevailing party rests squarely within the District Court's discretion. *Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 145 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994); *Rosario v. Amalgamated Ladies' Garment Cutters'*

*Union,* 749 F.2d 1000, 1004 (2d Cir.1984). Further, "[h]ours spent on claims unrelated to those forming the basis of the claim giving rise to the fee award must be excluded unless the claims 'involve a common core of facts or will be based on related legal theories'" *Rosario,* 749 F.2d at 1004 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983)). The District Court should focus "on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.... The most critical factor is the degree of success obtained." *Hensley,* 461 U.S. at 435–36, 103 S.Ct. at 1940–41.

■ The amount of an award of attorney's fees in a civil case is determined by the "lodestar" method. *Blanchard v. Bergeron,* 489 U.S. 87, 94–96, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989); *Cruz v. Local Union No. 3 of the International Brotherhood of Electrical Workers,* 34 F.3d 1148, 1159 (2nd Cir. 1994). That method initially estimates the amount of the fee award by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 563, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986). A reasonable attorneys fee is,

> one calculated on the basis of rates and practices prevailing in the market, *i.e.,* "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," and one that grants the successful civil rights plaintiff a "fully compensatory fee," comparable to what "is traditional with attorneys compensated by a fee-paying client."

*Missouri v. Jenkins,* 491 U.S. 274, 286, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989) (citation omitted). *See also Blum v. Stenson,* 465 U.S. 886, 895–96 & n. 11, 104 S.Ct. 1541, 1547 & n. 11, 79 L.Ed.2d 891 (1984).

The product of reasonable hours times a reasonable rate does not end the inquiry. "There remain other considerations that may lead the district court to adjust the fee upward or downward." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940. In considering an adjustment to the lodestar calculation in order to arrive at a "reasonable" amount of an award of attorney's fees in a civil rights case, the district court may consider the twelve factors set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5th Cir.1974). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

However, many of these factors are subsumed within the initial lodestar calculation. Thus, in *Blum,* 465 U.S. at 898–900, 104 S.Ct. at 1548–50, the Supreme Court held that the novelty and complexity of the issues, the quality of representation, the special skill and experience of counsel, and the results obtained are factors fully reflected in the lodestar calculation and cannot serve as independent bases for adjusting the basic fee award. *See also, Delaware Valley Citizens' Council,* 478 U.S. at 564–65, 106 S.Ct. at 3097–98; *United States Football League v. National Football League,* 887 F.2d 408, 415 (2d Cir. 1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990).

■ In determining the specific amount of an attorney's fee, the prevailing parties "are entitled to reasonable hourly rates which fall within the prevailing marketplace rates in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Cruz,* 34 F.3d at 1160; *New York State Nat'l Org. for Women v. Terry,* 737 F.Supp. 1350, 1361 (S.D.N.Y. 1990) (citation omitted), *aff'd in part, rev'd in part on other grounds,* 961 F.2d 390 (2d Cir.1992).

■ Furthermore, central to an application for attorney's fees is the submission of

time records reflecting the hours expended by counsel in pursuing the successful claims of their client. In order for a party to recover attorney's fees, such time records must be made contemporaneously with the associated work. *Lewis v. Coughlin,* 801 F.2d 570, 577 (2d Cir.1986). Also, "[t]hese records should specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir.1983). "The burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested." *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1265 (2d Cir.1987) (applying New York State law and noting that the Second Circuit rule is similar to that of New York); *see also Soler v. G & U Inc.,* 801 F.Supp. 1056 (S.D.N.Y. 1992).

With regard to costs and disbursements, a court will generally award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir.1987). "A prevailing party may be reimbursed for expenditures which add to the proceeding and are not part of the attorney's ordinary overhead." *Terry,* 737 F.Supp. at 1363.

## OBJECTIONS TO THE SPECIAL MASTER'S FEE APPLICATION

On behalf of Nassau County, the Comptroller of Nassau County, Frederick E. Parola ("Comptroller" or "Parola"), filed objections to the Special Master's fee application. Parola conducted an audit of the Special Master's application, including a review of the relevant time entries in the attorneys' diaries corresponding to the computer print-out of time charges submitted by the Special Master. The print-out details the time spent on this case by each of the attorney's working with the Special Master, and summarizes the tasks performed during this time. At the conclusion of his audit, Parola issued a report containing his objections to the Special Master's fee application.

Parola first objects to the Special Master's application on the ground that all original source documentation and detailed records supporting the Special Master's application were not provided to Parola for audit. Having reviewed the diary entries, Parola contends that the actual time worked on this case by three of the four attorneys at Winthrop Stimson could not be verified because the attorneys conglomerated the total hours worked each day on the case in their diaries, without delineating the actual time and hours spent on specific tasks related to the case. According to Parola's report, "[i]n all instances, co-mingling of tasks were generically described so that no specific task of a particular function performed could be ascertained to determine if the work was reasonable, wasteful or abusive."

In addition, Parola objects to the fee application because he has not been provided with the Special Master's "work product," namely the draft proposed report and districting plan, and any research materials, notes, memos, or conference minutes created by the Special Master or the attorneys working with him in the performance of their duties. On September 3, 1994, the Court denied a request by Parola to have access to these materials, on the ground that they were privileged attorney work product and have not yet been revealed to the parties or the public. Parola contends that without the "work product" of the Special Master, he cannot evaluate the work performed by the Special Master and his staff, and cannot determine if the time spent and billed by all of the attorneys is "reasonable to produce value as to the research, preparation and issuance of the Special Master's report and plan."

Parola also objects to the fee application on the ground that "numerous items" were included in the application by the Special Master which "have no intrinsic value" nor "contribute significantly" to the preparation of the proposed redistricting plan. Moreover, Parola contends overhead items were wrongly included in billings submitted for reimbursement. Parola lists the following items as either questionable or what he con-

siders an overhead cost, in addition to objecting to the entries of these items on the ground that the time records do not reflect the actual amount of time spent:

* Preparation of press releases, 30 telephone calls and 2 faxes to the media.

* Time charged for research on attorney fee issues, and for agreement on fee arrangements.

* Time charged for review and revision of the appointment by the Court.

* Time charged for researching and reviewing research on the following issues: open meetings law, and whether a federal judge can put a judicially created legislative plan on the ballot.

* Time charged for conferences, meetings and telephone calls where no reason or description was listed as to what was discussed and whether it related to the redistricting plan.

In additional to these general objections, Parola makes the following specific objections to the application:

1. Arithmetic errors in the time submitted by Mr. Lowenthal have resulted in an excess 3.75 hours of work charged. Accordingly, given Mr. Lowenthal's compensation rate of $250/hour, Mr. Lowenthal's fee should be reduced by $937.50.

2. A time entry for 2.5 hours by the Special Master on July 7, 1994 should be rejected, as this was prior to his appointment. Accordingly, given Mr. Wesely's compensation rate of $380/hour, Mr. Wesely's fee should be reduced by $950.00.

3. All time charged subsequent to the submission of the draft report and plan to the Court. According to Parola, this would result in a reduction of $3,965.25 in the fee application.

4. Communication and travel time charged, approximately 37.5 hours, resulting in a reduction of $11,437.50 in the fee application, as well as the costs of transportation, $553.82.

5. All time charged for meals, approximately 9 hours, resulting in a reduction of $2,710 in the fee application, as well as the costs of the meals, $269.51.

6. Time charged for organizing files, approximately 10.5 hours, resulting in a reduction of $1,265 in the fee application.

7. The charges for supplies, postage, photocopying, proofreading, faxing, and on line LEXIS and WESTLAW research, approximately $7,644.72.

8. Time charged for what Parola contends is duplication of services or work performed. This includes all the time charged by the attorneys accompanying the Special Master to the public hearings, approximately 49.25 hours resulting in $13,091.25 in charges. According to Parola, transcripts of the hearings were furnished to the Attorneys the next day, and there was no reason for the attorneys to attend the hearings and bill the time. Also included in this objection is $2,950 for time charged by the attorneys to interview Dr. Gartner and prepare a memorandum, and $7,973.75 for time charged by the attorneys to attend meetings with the Commission on Government Revision.

9. 2.75 hours of time charged by a Mr. Zaloom resulting in $269.50, for which there is no description of the work performed.

These objections to specific items in the fee application amount to $54,017.80 in fee and costs charged by the Special Master and Winthrop Stimson, that, according to the Comptroller, should be subtracted from the fee application.

In addition, Parola objects to Dr. Gartner's fee and some of the disbursements he has submitted. Parola contends that the $200 an hour fee charged by Dr. Gartner is unreasonable. Moreover, Parola claims that the time and description of work submitted by Dr. Gartner may not have been maintained as contemporaneous records. Finally, Parola objects to $7,417.14 in costs submitted by Dr. Gartner related to communication and travel time, meals, transportation, supplies, organizing files, and appearing in court. In total, Parola requests a reduction in Dr. Gartner's fee, and questions $7,417.14 in costs for time charged by Dr. Gartner.

After receiving the Special Master's supplemental application dated September 30, 1994, the Comptroller filed a further objec-

tion with the Court in a letter dated October 5, 1994. In this letter, Parola objects to the additional amount—$8,092.50—charged by one of the attorneys at Winthrop Stimson whose time charge was not available for the initial application submitted by the Special Master on August 16th. Parola contends that this additional amount is a duplication of work performed by the other attorneys working with the Special Master. Moreover, Parola objects to the entire supplemental application on the grounds that it mostly covers work charged pertaining to the audit of the Special Master and preparing the fee application for the Court.

Based on the above objections, the Comptroller contends that the amount of the Special Master's application should be reduced by $69,527.44, representing the gross amount of the specific items objected to by Parola. In addition to this reduction, Parola contends that the remaining balance—$185,094.60—should be reduced by one-half, on the grounds that many items charged by the Special Master have no apparent value to the formulation of the proposed districting plan requested by the Court, are redundant, and lack an adequate detailed explanation of exactly what was performed during the charged time.

In further support of reducing the remaining balance of the fee application by one-half, Nassau County cites to *Hart v. Community School Board of Brooklyn, New York*, 383 F.Supp. 699, 766 (E.D.N.Y.1974), *aff'd*, 512 F.2d 37 (2d Cir.1975). In that case Judge Weinstein stated that, after preliminary discussions with the parties, a reasonable fee for the special master appointed in that case to devise a school desegregation plan would be one-half of the fee obtainable by private attorneys in commercial matters.

### DISCUSSION

At the outset, the Court wishes to acknowledge that the Comptroller's audit and review of the Special Master's fee application was a detailed and highly competent undertaking. The Court appreciates the Comptroller's duty to preserve the County's monies and to review the application with considerable scrutiny. However, the Court must reject most of the Comptroller's objections to the fee application.

In the Court's view the computer print-out delineating the time charges submitted by the Special Master adequately sets forth the amount of time spent by the Special Master and the attorneys at Winthrop Stimson working on this case. These records also explain what tasks were performed during that period of time. It is of no consequence to the Court that the specific time entries are conglomerated and the tasks are co-mingled, because all of the work performed for the time entered relates to this case.

Likewise, the Court does not agree with Parola's assertion that it is necessary to see the final work product in order to evaluate the reasonableness of the time charged by the Special Master and Dr. Gartner. Indeed, having reviewed the draft proposed report and districting plan, which Parola was not privy to, and considering the intensity and number of tasks performed by the Special Master and his staff in the three weeks it took them to formulate the draft report and plan, the Court is of the view that the 837 hours charged by the Special Master and the attorneys at Winthrop Stimson, and the 133 hours charged by Dr. Gartner, are reasonable and fully of value with regard to the research, preparation and issuance of the Special Master's draft report and plan.

The Court also does not agree with the Comptroller's allegation that much of the work charged by the Special Master has no intrinsic value or is overhead that should not be included in the fee application. All of the Special Master's disbursements, the time spent organizing files, and the charges related to press releases, research on attorneys' fees, reviewing the appointment by the Court, and researching the ability of the Court to place a districting plan on a local ballot, are of value in drafting the proposed districting plan ordered by the Court. Moreover, these expenses are normally charged to fee-paying clients, and are not general overhead.

With respect to the specific items and dollar amounts objected to by Parola, the Court finds the majority of these objections

to be without merit. The time charged for travel is valid and compensable at the full rate charged by the Special Master, because according to the Special Master's statement at oral argument he and his staff worked while traveling. Moreover, the Court does not agree with Parola's contention that the time charged by the Special Master's staff for attending the public hearings or meetings with the Commission on Government Revision is duplicative. According to the Special Master, the attorneys helping him were a team with designated tasks. Due to the short-turn around period imposed by the Court's reference, real-time knowledge of what transpired at hearings and meetings was required by the attorneys to perform their jobs, thus necessitating attendance at the hearings and meetings.

■ The only specific dollar objections by the Comptroller that the Court finds valid are (1) the arithmetic errors in the tabulation of Mr. Lowenthal's daily time records, amounting to an overcharge of 3.75 hours in the sum of $937.50, (2) an entry on July 29, 1994 by Mr. Zaloom for 2.75 hours of work, in the sum of $269.50, that does not describe what was performed during that time, and (3) the time charged for time spent at meals (9 hours costing $2,710), and the costs of meals ($269.51). The Court is excluding the time and costs of meals. The Court has no doubt that the meal time was used by the Special Master and his staff for discussion of this matter. However, the time would have been taken anyway to perform this essential daily function, even in the absence of this assignment.

■ The Court also disagrees with Parola's contention that the supplemental fee application submitted by the Special Master should be rejected because, according to Parola, services charged for preparation of a fee application are not chargeable. Contrary to the Comptroller's contentions, it is well established that the time spent preparing the fee application is "a necessary part of the fee award." *Donovan v. CSEA Local Union 1000,* 784 F.2d 98, 106 (2d Cir.), *cert. denied,* 479 U.S. 817, 107 S.Ct. 74, 93 L.Ed.2d 30 (1986); *Gagne v. Maher,* 594 F.2d 336, 343–44 (2d Cir.1979) (setting forth rationale for

rule and reversing district court's denial of charges for preparing fee application), *aff'd,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).

■ The Court further believes that the rates charged by the Special Master and the attorneys at Winthrop Stimson who worked with the Special Master are reasonable. These rates are typical of the rates charged by partners and associates of comparable skill, experience and reputation working for New York area law firms of the caliber of Winthrop Stimson.

■ However, it is the Court's view that the rates charged for the work of summer interns, paralegals and other support staff are excessive. A law clerk's and paralegal's time is compensable in an award of attorney's fees. *Missouri v. Jenkins,* 491 U.S. at 285–86, 109 S.Ct. at 2471; *United States Football League,* 887 F.2d at 416. This Court will compensate the work performed by law student clerks and paralegals at a rate of $50 per hour. *See Aetna Casualty and Surety Co. v. Namrod Devel. Corp.,* No. 91–1609, 1992 WL 367100, 1992 U.S.Dist. LEXIS 17843 (S.D.N.Y. November 24, 1992) (paralegal work compensated at $55 per hour); *Lewis v. Tuscan Dairy Farms, Inc.,* No. 87–7607, 1992 WL 226927, 1992 U.S.Dist. LEXIS 13244 (S.D.N.Y. Sept. 3, 1992) (paralegal work compensated at $50 per hour). Accordingly, the time charges for summer interns, paralegals and other support staff will be reduced to reflect a compensation rate of $50 per hour.

With regard to the Special Master's fees, a consideration of the factors set forth by the Second Circuit in *Schreiber,* 415 F.2d at 380, for determining the reasonableness of a special master's fee, and the factors set forth in *Johnson,* 488 F.2d at 717, for determining adjustments to attorneys' fees calculated under the lodestar method, supports the rates and amount of attorney's fees charged by the Special Master in this case.

■ First and foremost, this matter is of the utmost importance to the government of Nassau County, because the present County legislature is unconstitutional and a new form

of legislature must be created in a timely manner. In this light, the services of the Special Master are invaluable. Second, the issues presented to the Special Master were complex and difficult. Third, the Special Master was very thorough in performing his duties and devising a proposed districting plan that would pass constitutional muster under the more stringent standards applicable to court-imposed redistricting plans. Fourth, the Special Master did in fact present such a plan, and the plan as reviewed, revised and, if necessary, imposed, would permit a final disposition of this matter should the present compromise plan be defeated in the November referendum. Fifth, a great deal of time was devoted to this job by the Special Master and his staff, in a very short time frame. And sixth, Mr. Wesely is a highly regarded, top-level and extremely capable attorney who has served—and continues to serve—the Eastern and Southern Districts of New York with great distinction.

■ For similar reasons, the Court rejects Parola's objections regarding the fees and disbursements of Dr. Gartner. Dr. Gartner has submitted a statement setting forth the hours he spent on this case, and the tasks he performed during those hours. In addition, he has documented the expenses he incurred as a result of being retained as a consultant in this case. In the Court's view, Dr. Gartner's fee of $200 an hour is reasonable. He has stated to the Court that the same rate was charged when he served as a consultant in connection with a New York State congressional redistricting plan. Moreover, the expenses he incurred in performing his job are not overhead, as they were incurred as a result of the work he performed on this case.

■ Finally, with respect to the County's contention that in cases involving a public entity the special master's fees should be cut by one-half, *see, e.g., Hart,* 383 F.Supp. at 767; *Reed v. Cleveland Board of Education,* 607 F.2d 737, 743–46 (6th Cir.1979), it is the Court's view that such a reduction is not a recognized mandatory standard among courts when determining a special master's fees. *See* David L. Levine, *Calculating Fees of Special Masters,* 37 Hastings Law Journal

141, 178–185 (1985) (recognizing that four methods of calculating a special master's fees exist, only one of which is the method advocated by the court in *Hart* ).

Moreover, the Court believes that the facts of the present case are distinguishable from *Hart.* In considering what fee to grant the special master in *Hart,* the court stated that "preliminary discussions with counsel suggest that a reasonable fee would be about one half that obtainable by private attorneys in commercial matters." *Id.* at 767. Here, there were no such preliminary discussions among the parties regarding a consent to a pre-determination of the Special Master's fees. *See Yonkers Board of Education,* 108 F.R.D. at 201–02 (refusing to apply *Hart* standard in a case where parties had not consented to special master's fees); *Weprin,* 1992 WL 512410 at *2–3, 1992 U.S.Dist. LEXIS 21617, at *9 (rejecting application of *Hart* ). Given that the Special Master and his staff dropped all their other work to focus almost exclusively on this matter, and that as a result they were precluded from working on more lucrative business from other private business clients, a reduction of the fee application by one-half would be inappropriate.

However, the Court does believe that because of the nature of this case, namely, one involving public institutional relief and service to the public, a twenty-five percent reduction of the Special Master's fee application is appropriate. *See, e.g., Weprin,* 1992 WL 512410 at *3, 1992 U.S.Dist. LEXIS 21617 at *13–14 (lowering special master's hourly rate to reflect public interest nature of work involved); *Reed,* 607 F.2d at 746 (reducing special master's fees, and holding: "We believe that many of the considerations which apply to the setting of attorneys' fees in public litigation apply to setting the fees of a special master."); *Kyriazi v. Western Electric Co.,* 465 F.Supp. 1141, 1148 (D.N.J.1979) (reducing special masters' rates because of the attorneys' obligations as members of the bar).

The Court also finds support for such a reduction in the Supreme Court's instructions in *Newton,* where the court stated "[t]he rights of those who ultimately pay

must be carefully protected," when a court sets compensation for a special master. *See* 259 U.S. at 104, 42 S.Ct. at 439. Here, the taxpayers of Nassau County will ultimately pay for the Special Master's services. The Court believes that in the taxpayers' interests, the twenty-five percent reduction in the fee would be appropriate.

Accordingly, for the reasons stated above the fee application of the Special Master shall be reduced by twenty-five percent with respect to the charges by the Special Master and the attorneys at Winthrop, Stimson, Putnam & Roberts.

The fee application with respect to the Special Master's and Winthrop Stimson's services is for $227,504.90, consisting of $213,993.78 in fees and $13,511.12 in disbursements. Subtracting from the fee portion (1) the arithmetic errors in the tabulation of Mr. Lowenthal's daily time records, amounting to $937.50, (2) the 2.75 hours of unaccounted work by Mr. Zaloom, amounting to $269.50, (3) the nine hours of meal time charged, amounting to $2,710, and (4) the amount for time charged by paralegals and summer interns in excess of $50 per hour, namely $3,963.63 (computed as follows: 32.5 hrs. × $50 = $1625, plus 71 hrs. × $50 = $3550; $1625 + $3550 = $5175; $9138.63 [amount of original application] minus $5175 [recomputed amount at $50 per hour] equals $3963.63), results in an allowed fee application in the sum of $206,113.15. Twenty-five percent of this amount is $51,528.28. Subtracting the twenty-five percent figure of $51,528.28 from the allowed fee application of $206,113.15 results in a total reduced fee figure of $154,584.87 for the services of the Special Master and the attorneys at Winthrop, Stimson, Putnam & Roberts.

Subtracting the $269.51 in the cost of meals charged by the Special Master and attorneys of his staff from the disbursement portion of the fee application results in $13,241.61 of allowable disbursements.

Thus, the total fee and disbursement application for the services of the Special Master and the law firm of Winthrop, Stimson Putnam & Roberts, as allowed and reduced by the Court, is $167,826.48, consisting of $154,584.87 in fees and $13,241.61 in disbursements.

The fee and disbursement application of Dr. Gartner is approved without reduction in the total sum of $27,117.14, consisting of $26,550 in fees and $567.14 in disbursements.

## CONCLUSION AND ORDER

The parties were warned by the Court at the outset of this matter, and thereafter, that the failure by the Board of Supervisors to act in a timely manner would necessitate the Court's appointment of a Special Master, and that the Special Master's fees and costs would be borne by the Board of Supervisors and the County. Indeed, if the compromise districting plan agreed to by the Board of Supervisors is not approved by the residents of the County, the Court may very well require the services of the Special Master again and, in that event, additional costs shall be incurred by the County. However, in this Court's view the Special Master's fees are a small price to pay for the valuable contribution by the Special Master and his staff to the herculean task of establishing a constitutional form of government in Nassau County, with its obvious benefits to the County and its citizens in the future.

For the reasons stated in this decision, it is hereby

**ORDERED,** that the County of Nassau, of the State of New York, and the Nassau County Board of Supervisors shall pay, within twenty (20) days from the date of this Order, the sum of One Hundred Sixty Seven Thousand Eight Hundred Twenty Six Dollars and Forty Eight cents [**$167,826.48**] to the law firm of Winthrop, Stimson, Putnam & Roberts; and it is further

**ORDERED,** that the County of Nassau, of the State of New York, and the Nassau County Board of Supervisors shall pay within twenty (20) days from the date of this Order the sum of Twenty Seven Thousand One Hundred Seventeen Dollars and Fourteen cents [**$27,117.14**] to Dr. Alan Gartner, Ph.D, Dean for Research of the Graduate School & University Center of the City University of New York.

**SO ORDERED.**